958 F.2d 377
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Robert A. LIEBMAN, husband, Janet M. Sims, wife; Plaintiffs-Appellees,
v.
ALPHAGRAPHICS FRANCHISING, INC., jointly and severally;
Alphagraphics, Inc., Defendants-Appellants.
 No. 90-16809.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 16, 1992.
Decided Feb. 28, 1992.
 
 Before GOODWIN, FLETCHER and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Alphagraphics, Inc. and Alphagraphics Franchising, Inc. (collectively "Alphagraphics") invoked the arbitration clause of a franchise contract in a dispute with a franchisee. Alphagraphics lost the arbitration. The franchisee, Robert Liebman et al., sued in district court to enforce the arbitration award, and prevailed. Alphagraphics appeals, and we affirm.
 
 
 3
 In October, 1985, Liebman signed a franchise agreement with Alphagraphics. Two years into the agreement, Alphagraphics, believing that Liebman was delinquent in his payments, demanded arbitration.
 
 
 4
 Liebman refused to arbitrate the dispute and instead filed a fraud claim against Alphagraphics in a Texas state court in April, 1988. Although Liebman had refused to participate in arbitration, he sent copies of the Texas court pleadings to the American Arbitration Association ("AAA")--the dispute resolution body to which Alphagraphics had submitted its initial demand. The AAA agreed to postpone the arbitration hearing until Liebman's court action was resolved. Meanwhile, in the court action, Alphagraphics removed the proceedings to federal district court. When the federal court stayed proceedings pending the arbitration hearing, Liebman submitted to arbitration.
 
 
 5
 Liebman filed with the AAA a counterclaim which was essentially the same claim that Liebman had asserted in the Texas court. The arbitration proceeding was conducted over six days spread over three months. On March 1, 1990, the AAA announced its decision awarding Liebman $69,616 on his counterclaim and $21,727.14 for his attorneys' fees and costs. Alphagraphics refused to pay the award and Liebman filed this action to enforce the award. The district court granted judgment in favor of Liebman.
 
 
 6
 On appeal, Alphagraphics argues that the arbitrators made three reversible errors. First, Alphagraphics claims that the arbitrators erred by allowing Liebman's counterclaim. Next, Alphagraphics contends that the arbitrators impermissibly interfered with Alphagraphics' right to counsel. Finally, Alphagraphics argues that the arbitrators refused to allow Alphagraphics to present material evidence. Alphagraphics insists that these errors--individually and collectively--leave this court no choice but to vacate the arbitration award.
 
 
 7
 Our standard of review begins with deference to the arbitration process. See Sunshine Mining Co. v. United Steelworkers of America, AFL-CIO, CLC and Local 5089, 823 F.2d 1289, 1293 (9th Cir.1987). A court may, however, pursuant to 9 U.S.C. § 10, review for misconduct or for acting in excess of power. Section 10 provides, in pertinent part:
 
 
 8
 In either of the following cases the [district] court ... may make an order vacating the award upon the application of any party to the arbitration-- ...
 
 
 9
 (c) Where the arbitrators were guilty of misconduct ... in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced.
 
 
 10
 (d) Where the arbitrators exceeded their powers....
 
 I. The "Surprising" Counterclaim
 
 11
 Alphagraphics contends that the arbitrators committed misconduct and exceeded their powers in allowing Liebman's counterclaim.
 
 
 12
 Under § 10(d), Alphagraphics argues that pursuant to the franchise agreement, Liebman's filing of the claim was untimely. Because arbitrators derive their authority from the agreement which calls for arbitration, United Steel Workers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 597 (1960), Alphagraphics contends that § 10(d) requires this court to vacate the award.
 
 
 13
 Two clauses of the franchise agreement, section 27 and section 52, address arbitration. Section 27 provides that "[a]ll disputes, claims and questions regarding the rights and obligations of Franchisor and Franchisee under the terms of this Agreement ... are subject to arbitration. Either party may make a demand for arbitration by filing such demand in writing with the other party within thirty (30) days after the dispute first arises." Section 52 provides that "[a]ny controversy or claim arising out of or relating to this agreement or any breach thereof, including, without limitation, any claim that this agreement or any portion thereof is invalid, illegal or otherwise voidable, shall be submitted to arbitration...."
 
 
 14
 Alphagraphics insists in effect that the 30-day deadline is jurisdictional. This reading seems to ignore the fact that Alphagraphics itself chose to invoke arbitration and discovered its own 30-day language after it lost the arbitration.
 
 
 15
 Moreover, Section 52 explicitly covers claims alleging "that this agreement is invalid." This language fits Liebman's counterclaim. Unlike section 27, section 52 contains no time limit. Accordingly, Liebman filed his counterclaim pursuant to the franchise agreement and the arbitrators did not exceed their powers by allowing the claim.
 
 
 16
 Alphagraphics' second allegation of error regarding the counterclaim concerns the prejudice Alphagraphics claims to have suffered due to surprise. Alphagraphics contends that Liebman sprung the counterclaim upon Alphagraphics on the eve of the hearing and that in allowing the counterclaim, the arbitrators engaged in misconduct under § 10(c). Alphagraphics forgets that it had been in possession of the full text of the counterclaim during the Texas court litigation which Alphagraphics caused to be stayed so arbitration could proceed. There was no surprise.
 
 II. The Silence of the Lawyers
 
 17
 Alphagraphics' second principal argument for vacating the arbitration award concerns the arbitrators' rulings with regard to counsel. Alphagraphics contends that by denying Alphagraphics' request for substitution of counsel, and by enforcing certain rules concerning co-counsel, the arbitrators committed reversible error. Alphagraphics' argument can be properly understood only in light of the factual scenario from which it arose.
 
 
 18
 At the start of the hearing, counsel for Liebman was accompanied by a Mr. Flaxman, a California attorney who apparently represented other franchises but not Liebman. Counsel for Alphagraphics, Mr. Mather, objected to Mr. Flaxman's presence. In objecting, Mr. Mather referred to Mr. Flaxman's involvement with Alphagraphics in another suit, and Mather's lack of awareness that California counsel was going to be present. The arbitrators ruled that "Mr. Flaxman may remain in the room with the understanding that he wouldn't be asking any questions or participating in examination or cross-examination of any witnesses."
 
 
 19
 After the second day of hearings, Alphagraphics decided to bring in additional litigation counsel, Mr. Feulner. Mr. Feulner had two weeks to bring himself up to speed before the next scheduled hearing date. During that time, Alphagraphics notified AAA (but not Liebman) that Mr. Feulner would act as Mr. Mather's co-counsel.
 
 
 20
 When the hearing resumed on December 12, 1989, Alphagraphics learned to its surprise that the arbitrators intended to impose the same rules concerning co-counsel on Alphagraphics as they had imposed on Liebman at Alphagraphics' request. At that point, Alphagraphics' counsel moved to substitute Mr. Feulner for Mr. Mather. Alphagraphics argued that substitution was necessary because Mr. Mather might become a witness in the case. The arbitrators took Alphagraphics' argument at face value and ruled that "[i]n the event Mr. Mather does become a witness[,] for that limited purpose only [ ] we would let Mr. Feulner conduct the examination of Mr. Mather."
 
 
 21
 Alphagraphics argues that the arbitrators' rulings concerning Mr. Feulner constituted misbehavior which prejudiced Alphagraphics and thus are grounds for vacating the award under § 10(c). Alphagraphics insists that its interests in the arbitration hearing were prejudiced by having its inside counsel, Mr. Mather, represent it instead of Mr. Feulner. We need not address Mr. Mather's competence because Alphagraphics cannot demonstrate arbitrator misbehavior.
 
 
 22
 Arbitrator decisions which are fair and rational do not constitute misconduct. See, e.g., United States Postal Service v. National Assoc. of Letter Carriers, AFL-CIO, 847 F.2d 775 (11th Cir.1988); Reichman v. Creative Real Estate Consultants, Inc., 476 F.Supp. 1276, 1285 (S.D.N.Y.1979). In this case, the arbitrators' rulings concerning counsel were fair and rational. Their restrictions concerning the role of co-counsel were imposed equally on each side. Alphagraphics disputes this conclusion, arguing that the particular ruling was closer to Liebman's request than to that of Alphagraphics. In so arguing, Alphagraphics seriously underestimates the discretion given to arbitrators. Any rule that would encourage parties to make extreme requests in the assurance that they would achieve roughly half of what they were asking for would destroy the efficacy of the arbitration process. In addition, the arbitrators' restrictions regarding co-counsel were perfectly acceptable to Alphagraphics when they were imposed on Liebman. Alphagraphics cannot now challenge these restrictions. Finally, the arbitrators' ruling on Alphagraphics' motion to substitute counsel responded appropriately to the concerns expressed by Alphagraphics at the hearing.
 
 III. The Agreed-Upon Rules of Procedure
 
 23
 In its final attempt to compel vacation of the arbitration award, Alphagraphics argues that the arbitrators were "guilty of misconduct ... in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(c). At one point in the hearing, the arbitrators refused to allow counsel for Alphagraphics to read into the record portions of Mr. Liebman's deposition. In arguing that this conduct satisfies § 10(c), Alphagraphics cites the record out of context.
 
 
 24
 At the start of the hearing the parties stipulated to forego the standard system employed in court whereby one side presents all of its witnesses, followed by the other side. In this hearing, the parties decided that because of travel concerns all witnesses would be called only once. At that time, each side could fully question the witness. The parties adopted this system in order to simplify and speed up the process. The arbitrators agreed to the stipulation and conducted the hearing accordingly.
 
 
 25
 Toward the end of the hearing, counsel for Alphagraphics requested permission to read into the record portions of Mr. Liebman's deposition. At this point in the proceedings, Mr. Liebman had already testified as a witness and had been cross-examined with his deposition. Several other witnesses had followed Liebman before Alphagraphics made its request. In response to the arbitrators' query, counsel for Alphagraphics was unable to explain why he had failed to make his point concerning the deposition during his examination of Mr. Liebman--the appropriate time for such a request under the system agreed to by the parties. Accordingly, the arbitrators refused Alphagraphics' request to put the whole deposition in evidence.
 
 
 26
 Alphagraphics' late attempt to introduce Mr. Liebman's deposition was outside of the rules of evidence agreed to by the parties. Accordingly, it was fair and rational for the arbitrators to evenly apply these rules and refuse Alphagraphics' request to violate them.
 
 CONCLUSION
 
 27
 Alphagraphics "bargained ex ante for arbitration as an alternative means of dispute resolution, and ex post must abide by this bargain." E.I. DuPont de Nemours v. Grasselli Employees Independent Ass'n, 790 F.2d 611, 614 (7th Cir.1986). The appellees are entitled to costs and attorneys' fees in this court upon submission of the appropriate claim.
 
 
 28
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3