**WAILUA ASSOCIATES, a California limited partnership, Plaintiff,**

v.

**The AETNA CASUALTY AND SURETY COMPANY, a Connecticut corporation, et al., Defendants.**

**Civ. No. 94–00446 ACK.**

United States District Court, D. Hawai'i.

Jan. 19, 1995.

---

Richard C. Sutton, Jr., Tracy G. Chinen, Rush Moore Craven Sutton Morry & Beh, Honolulu, HI, Mark L. Tuft, Stephen D. Kaus, Cooper White & Cooper, San Francisco, CA, for Wailua Associates.

Dianne G. Jagmin, Case & Lynch, Honolulu, HI, G. Edward Rudloff, Jr., Marjie D. Barrows, Gordon & Rees, San Francisco, CA, Paul A. Lynch, Lyle M. Ishida, Lynch & Farmer, Honolulu, HI, for Aetna Casualty & Surety Co.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

KAY, Chief Judge.

### BACKGROUND

Currently before this Court are Defendant The Aetna Casualty and Surety Company ("Aetna") and Plaintiff Wailua Associates' ("Wailua") cross motions for declaratory relief. Essentially, both parties are seeking a judicial determination of the nature and scope of the alternative dispute resolution procedure provided for under a policy of insurance ("the Policy") issued by Defendant Aetna to Plaintiff Wailua. In particular, Defendant requests that this court issue an order declaring the following:

(1) That the Federal Arbitration Act, 9 U.S.C. § 1, *et. seq.*, governs any appraisal conducted pursuant to the Policy;

(2) That Aetna is entitled to due process in the conduct of the appraisal including, but not limited to, a full and fair opportunity to be heard at a hearing before the appraisal panel, the opportunity to call, examine and cross-examine witnesses, and the opportunity to present documentary and other tangible evidence; and

(3) That issues relating to the existence and extent of coverage under the Policy, including:

(a) whether Wailua failed to mitigate its damages;

(b) whether Wailua breached the "DUTIES IN THE EVENT OF LOSS OR DAMAGE" condition in the Policy;

(c) whether any coverage for increased cost of repair or construction caused by enforcement of Kauai's Flood Plain Management Act or other codes or law is implicated; and/or

(d) whether any Policy exclusion applies to preclude coverage;

ought to be resolved by the Court, rather than by the appraisal panel.

Plaintiff seeks a declaration that:

(1) Wailua's claim shall be determined by an appraisal under the policy, and the appraisers and umpire are empowered to consider all of the issues necessary for a determination of the value of the property and the amount of the loss, including, but not limited to, the application of all building codes and government regulations, including Kauai's Flood Plan Management Act and the impact of such codes and regulations on the period of reconstruction of the Coco Palms Resort;

(2) The appraisers and umpire are entitled to decide the process to be followed in conducting the appraisal;

(3) The appraisal provided in paragraph F.2 of the policy need not be conducted under any formal arbitration rules;

(4) The appraisal provided for in paragraph F.2 of the policy is not an arbitration and is not governed by the Federal Arbitration Act;

(5) Wailua shall be entitled to its attorneys' fees and costs according to proof.

### FACTS

On or about September 11, 1992, the Coco Palms Resort on the island of Kauai sustained damage as a result of Hurricane Iniki. The Coco Palms Resort is owned by Wailua. During the period November 1, 1991 through November 1, 1992, the Coco Palms Resort was insured under an Aetna insurance policy covering property damage resulting from the hurricane. In addition to covering the actual hurricane damage, the Policy provided coverage for the increased cost of repair or replacement caused by enforcement of ordi-

nances and codes.[1] According to Plaintiff, the loss sustained by their resort implicated a number of codes, including Kauai's Flood Plain Management Act, the Americans with Disabilities Act, Kauai's fire code, the Uniform Building Code and other safety codes.

Wailua and Aetna have been unable to reach an agreement as to the value of the Coco Palms Resort or the amount of loss sustained by the resort as a result of Hurricane Iniki. On May 25, 1994, Wailua demanded an appraisal of the property value and amount of loss pursuant to the following provision of the insurance policy:

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we still retain our rights to deny the claim.

Because the parties disagree as to the nature and scope of this provision, Wailua filed an action for declaratory relief against Aetna in the First Circuit Court of the State of Hawaii, seeking a judicial determination of both the scope of the appraisal and the procedures the panel of appraisers must follow. Aetna

---

1. Specifically, the policy provides:
   f. Ordinance or Law Coverage
   (1) If a covered cause of loss occurs to covered real property we will pay:
   (a) for loss or damage caused by enforcement of any ordinance or law that:
   (i) requires the demolition of parts of the same property not damaged by a covered cause of loss;
   (ii) regulates the construction or repair of buildings or establishes zoning or land use requirements at the "location"; and
   (iii) is in force at the time of the loss.

   (b) the increased cost to repair, rebuild or construct the property caused by the enforcement of building, zoning or land use ordinance or law. If the property is repaired or rebuilt, it must be intended for similar occupancy as the current property, unless otherwise required by zoning or land use ordinance or law.
   (c) the cost to demolish and clear the site of undamaged parts of the property caused by enforcement of the building, zoning or land use ordinance or law.

subsequently removed the action to this Court on the basis of the diversity of the parties and filed a counterclaim for declaratory relief.

In its motion for summary judgment, Defendant Aetna contends that the appraisal provision is an agreement to arbitrate covered by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et. seq.* Aetna further contends that an appraisal conducted pursuant to the FAA requires a hearing at which the parties have the opportunity to call, examine and cross-examine witnesses, and the opportunity to present documentary and other tangible evidence. According to Aetna, the scope of this hearing is limited to the issue of the value of the Coco Palms Resort before the hurricane and the actual damage caused by the hurricane. Aetna asserts that issues relating to coverage under the insurance policy, including whether Aetna is liable for any increased cost of repair or construction caused by enforcement of Kauai's Flood Plain Management Act or other codes or law, must be decided by the Court.

In contrast, Plaintiff Wailua contends that the policy "unambiguously calls for an appraisal" and that an appraisal is not a formal arbitration subject to the procedural requirements of the Federal Arbitration Act ("FAA"). Plaintiff does not dispute that coverage issues must be addressed by the Court and not the appraisers. However, Plaintiff contends that the appraisers' fact-finding investigation into the amount of loss sustained by the resort necessarily includes consideration of the applicable codes and governmental regulations which impact the cost of repair, particularly where, as in this case, there is undisputed code upgrade coverage under the policy.

### *SUMMARY JUDGMENT STANDARD*

■ Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Electrical. Serv. v. Pacific Elec. Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir.1987). Instead, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *Id.* At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987), *citing, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355,

89 L.Ed.2d 538 (1986). Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis original), citing, *Matsushita, supra,* 475 U.S. at 587, 106 S.Ct. at 1356. Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Services,* 809 F.2d at 630–31.

## DISCUSSION

### I.  APPLICABILITY OF THE FAA

■ The Federal Arbitration Act, 9 U.S.C. §§ 1–16, sets forth the general federal law relating to arbitration. The Act was passed to ensure that courts would honor and enforce the contractual agreements of parties who choose to resolve their disputes through the informal process of arbitration. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 625–26, 105 S.Ct. 3346, 3352–53, 87 L.Ed.2d 444 (1985). The FAA is a congressional declaration of a national policy in favor of arbitration, *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), and pursuant to its terms courts must "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985). The Act provides for district courts to stay legal proceedings on issues referable to arbitration, 9 U.S.C. § 3, and empowers the courts to compel arbitration of arbitrable issues, 9 U.S.C. § 4. Once an arbitral award has been rendered, sections 10 and 11 of the FAA establish the circumstances in which a court may vacate or modify the award. 9 U.S.C. §§ 10, 11.

■ The United States Supreme Court has instructed that the FAA creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hospital,* 460 U.S. at 24, 103 S.Ct. at 941. Whether a dispute is covered under the Act is thus a question of federal law. *Southland Corp. v. Keating,* 465 U.S. 1, 12, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984). Because the Act was created pursuant to Congress' broad power to regulate interstate commerce, the sine qua non of the FAA's applicability to a particular dispute is an agreement to arbitrate the dispute in a contract which evidences a transaction in interstate commerce.[2]

Neither the FAA nor the United States Supreme Court have defined what constitutes an agreement to arbitrate within the coverage of the Act. The Ninth Circuit resolved this dilemma in *Wasyl, Inc. v. First Boston Corporation* by supplementing federal law with a state definition of arbitration. 813 F.2d 1579, 1582 (9th Cir.1987). Attempting to determine whether a certain appraisal was an arbitration, the *Wasyl* court acknowledged that federal substantive law controls questions of arbitrability, but noted that the FAA does not define "arbitration". *Id.* at 1581–82. Lacking federal guidance on this issue, the court reasoned that the state law definition of arbitration is not preempted by federal law so long as it is not inconsistent with the goals of the FAA. *Id.* at 1582. Because the dispute in *Wasyl* arose in California, the Ninth Circuit court looked to California law which included appraisals in the statutory definition of agreements to arbitrate. Concluding that this definition was consistent with the FAA policy encouraging parties to resolve their disputes through arbitration, the court borrowed the definition and held that the appraisal constituted an arbitration within the coverage of the FAA. *Id.*

### II.  DEFINITION OF ARBITRATION UNDER HAWAII LAW

■ Unlike California, Hawaii's arbitration statute does not define what constitutes

---

2. The United States Supreme Court has long recognized that the word "commerce" as used in the Commerce Clause includes insurance. *United States v. South–Eastern Underwriters Assn.,* 322 U.S. 533, 552, 64 S.Ct. 1162, 1173, 88 L.Ed. 1440 (1944). Clearly the insurance policy Aetna issued to Wailua involves interstate commerce. Aetna is a Connecticut corporation, Wailua is a California Limited Partnership and the properties insured under the policy are located in Hawaii and other states.

**1148**

an "agreement to arbitrate." *See* H.R.S. §§ 658–1 et. seq. The Hawaii Supreme Court, however, has addressed this issue and held that whether an agreement calls for arbitration must be determined from the entire context of the agreement and not from any particular word, phrase or clause. *Ching v. Hawaiian Restaurants,* 50 Haw. 563, 565, 445 P.2d 370 (1968). Although there are distinctions in some of the Hawaii cases, such as reference to an arbitrator or reference to the arbitration statute in the appraisal provision, the Hawaii courts have not relied on those distinctions in promulgating their rulings. Rather, if an agreement provides that disputes will be submitted to an appraisal panel and that the panel's decision is to be "final, conclusive and binding," the Hawaii courts have held that the provision should be construed as an agreement to arbitrate, subject to Chapter 658 of the Hawaii Revised Statutes. *Id.* at 566, 445 P.2d 370; *Leeward Bus Company v. City and County of Honolulu,* 58 Haw. 64, 69, 564 P.2d 445 (1977); *Loyalty Development Company v. Wholesale Motors, Inc.,* 61 Haw. 483, 487–88, 605 P.2d 925 (1980). Parties seeking to enforce an agreement's provisions regarding resolution of disputes covered by such provisions must do so pursuant to H.R.S. chapter 658. *Beclar Corporation v. Young,* 7 Haw. App. 183, 192, 750 P.2d 934 (1988).

▮▮▮▮ In the case at bar, the applicable provision of Aetna's insurance policy was an agreement to submit any dispute regarding the value of the property and the amount of loss to an appraisal panel at the request of either party. A decision reached by the panel was to be binding on both parties. Although the Court would agree with Wailua that under general law this provision would be construed as an appraisal agreement, clearly, as the case law of Hawaii has developed, it constitutes an agreement to arbitrate. As an arbitration agreement pursuant to Hawaii state law, the provision falls squarely within the scope of the FAA.

### III. *PROCEDURAL REQUIREMENTS*

▮▮▮▮ Neither the FAA nor the Hawaii arbitration statute identifies the procedures to be used in conducting an arbitration. Rather, these procedures are generally either expressed in the agreement, *Leeward Bus Company, Ltd.,* 58 Haw. at 71, 564 P.2d 445; agreed upon by the parties, *Liebman v. Alphagraphics Franchising Inc.,* 1992 WL 39307, 958 F.2d 377 (9th Cir.1992); or left to the discretion of the arbitrators. *Id.* Arbitrations do not require the same procedural protections as judicial proceedings: the arbitrator may rely on evidence inadmissible under the Federal Rules of Civil Procedure and parties do not have an absolute right to cross-examine witnesses. *Sunshine Mining Company v. United Steelworkers of America,* 823 F.2d 1289, 1295 (1987) (citing *Bell Aerospace Co. Division of Textron, Inc. v. Local 516,* 500 F.2d 921, 923 (2d Cir.1974) and *Hoteles Condado Beach La Concha & Convention Center v. Union De Tronquistas Local 901,* 763 F.2d 34, 40 (1st Cir.1985)). However, as the Ninth Circuit recognized in *Sunshine Mining Company,* the arbitrator must grant the parties a "fundamentally fair hearing." "A hearing is fundamentally fair if it meets 'the minimal requirements of fairness'—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." *Id.* at 1295 (citing *Ficek v. Southern Pacific Co.,* 338 F.2d 655, 657 (9th Cir.1964), cert. denied, 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1965)). The arbitrator is not bound to hear all of the evidence tendered by the parties; however, he or she must give each party an adequate opportunity to present its evidence and arguments. *Hoteles Condado Beach, La Concha and Convention Center,* 763 F.2d at 39.

▮▮▮▮ In the case at bar, the parties request that this Court issue a declaration as to the procedures the appraisal panel must follow in resolving their dispute as to the value of the Coco Palms Resort and the damage it sustained as a result of the hurricane. Such a declaration, however, is beyond the scope of this Court's powers. *See Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.,* 935 F.2d 1019, 1024 (9th Cir. 1991) (district court compelled arbitration according to the terms of the parties agreement). Aetna and Wailua should attempt to arrive at a mutually acceptable set of procedures pursuant to their agreement to submit

the dispute to an appraisal panel. If they cannot agree, the appraisers and the umpire should determine the process to be followed in conducting the appraisal so as to provide both parties a fundamentally fair hearing, including adequate notice, a hearing and adequate opportunity to present evidence and arguments.

## IV. *SCOPE OF PROCEEDINGS*

The scope of arbitration proceedings pursuant to the FAA is defined by the parties agreement to arbitrate. *See State Farm Mutual Automobile Insurance Co. v. Fernandez*, 767 F.2d 1299, 1301 (9th Cir. 1985). Where the agreement unambiguously limits the scope of arbitration to particular issues, the parties have no right to demand a broader application. *Id.* Likewise, the arbitrator lacks authority to sua sponte determine issues beyond the scope of the agreement. However, where the agreement is ambiguous, the arbitrator has broad discretion to give meaning to the language of the agreement. *See Sunshine Mining Company*, 823 F.2d at 1293, 1294. Because of the FAA's policy favoring arbitration, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Wasyl*, 813 F.2d at 1581–82.

The agreement between Aetna and Wailua provides that any dispute over the value of the Coco Palms Resort or the amount of loss sustained by the resort will be submitted to an appraisal panel. The parties disagree whether the appraisers may consider the impact of Kauai's Flood Plain Management Act (FPMA) or other codes or laws. Wailua argues that consideration of building codes and regulations are a necessary and integral part of determining the replacement cost of the hurricane-damaged facilities. Aetna, on the other hand, contends that the appraisers should consider the impact of the laws and regulations only if it is determined that Aetna will be liable for upgrades under the Act or laws. Apparently, if the damage to the Coco Palms Resort caused by Hurricane Iniki does not exceed 50% of the pre-hurricane market value of the resort, the resort will be "grandfathered" as a nonconforming structure under applicable laws.

According to Aetna, even if the damage exceeds this amount, Aetna will not be liable for the cost of the upgrades unless it is actually liable for damage exceeding 50%. Because Aetna contends Wailua failed to mitigate the damage to the resort, Aetna argues that consideration of the impact of the building codes and laws should not be considered by the appraisal panel until its actual liability is determined.

Clearly, the appraisal panel should not consider issues pertaining to coverage and liability under the insurance policy as these issues are beyond the scope of the parties agreement to arbitrate. Because these issues have not yet been determined, the Court does not agree that the scope of the panel's appraisal depends on Aetna's ultimate liability. Pursuant to the parties agreement, the panel is to determine the value of the Coco Palms Resort prior to the hurricane and the damage sustained by the resort as a result of the hurricane. Although the agreement fails to specify whether the panel should consider the impact of the FPMA and other regulations in making its appraisal, it is undisputed that the insurance policy provides coverage for the increased cost of repair or replacement caused by enforcement of building codes and laws. Broadly construing the scope of arbitrable issues under the Policy, the Court rules that the appraisal panel has discretion to consider Kauai's Flood Plain Management Act and other regulations in its appraisal under the insurance policy.

### CONCLUSION

For the foregoing reasons, this Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment. The Court also GRANTS in part and DENIES in part Plaintiff's Cross Motion for Summary Judgment.

IT IS SO ORDERED.