**FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

<span style="color:red">**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000513
17-FEB-2023
08:30 AM
Dkt. 115 OP**</span>

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

EDMOND KRAFCHOW and KATHLEEN KRAFCHOW, Plaintiffs-Appellees,
v.
DONGBU INSURANCE CO., LTD., nka DB INSURANCE CO., LTD.,
JOHN MULLEN & CO., INC., Defendants-Appellants,
and
JOHN DOES 1-10, JANE DOES 1-10, and DOE ENTITIES 1-10,
Defendants

NO. CAAP-21-0000513

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 2CC191000266)

———

EDMOND KRAFCHOW and KATHLEEN KRAFCHOW, Plaintiffs-Appellees,
v.
DONGBU INSURANCE CO., LTD., nka DB INSURANCE CO., LTD.,
JOHN MULLEN & CO., INC., Defendants-Appellants,
and
JOHN DOES 1-10, JANE DOES 1-10, and DOE ENTITIES 1-10,
Defendants

NO. CAAP-21-0000517

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 2CC191000266)

FEBRUARY 17, 2023

GINOZA, CHIEF JUDGE, HIRAOKA AND WADSWORTH, JJ.

OPINION OF THE COURT BY HIRAOKA, J.

These consolidated appeals arise from first-party insurance claims[1] made by Plaintiffs-Appellees Edmund Krafchow and Kathleen Krafchow (collectively, the **Krafchows**) under insurance policies issued by Defendant-Appellant **Dongbu** Insurance Co., Ltd. (now known as DB Insurance Co., Ltd.).  We must decide whether the appraisers and umpire who were to appraise "the amount of loss" had the power to decide what amount was owed by Dongbu to the Krafchows under the insurance policies.  We hold they did not.  They were to decide the amount of the Krafchows' loss irrespective of insurance coverage, not the amount of covered loss.  Accordingly, we vacate **(1)** the "Order Granting Plaintiffs' Motion to Confirm Appraisal Summary and Awards" entered on July 26, 2021; **(2)** the "Amended Order Denying Defendants' Motion to Vacate and/or Modify Three Appraisal Awards or, in the Alternate, to Stay, and Reconfirming the Appraisal Awards" entered on June 13, 2022; and **(3)** the "Amended Order Denying Defendants' Motion to Vacate and/or Modify Three Appraisal Awards and Reconfirming Appraisal Awards" entered on June 14, 2022.[2]

**BACKGROUND AND PROCEDURAL HISTORY**

The Krafchows owned real property on the island of Maui.  There were three structures on the property: the **Villa**; the **Cottage**; and the **Garage**.  The structures were insured under separate insurance policies issued by Dongbu to the Krafchows.  A homeowners policy covered the Villa.  The Cottage and the Garage were covered by dwelling fire policies.

The structures and their contents were damaged because of a wildfire.  The Krafchows made insurance claims for their

---

[1]    A "first-party claim" is made under one's own insurance policy "for losses suffered by the insured."  Best Place, Inc. v. Penn Am. Ins. Co., 82 Hawaiʻi 120, 124 n.4, 920 P.2d 334, 338 n.4 (1996).

[2]    The Honorable Kelsey T. Kawano presided.

loss.  Dongbu tendered over $300,000 to the Krafchows (under reservations of rights)[3] pending preparation of "final settlement figures[.]"  Dongbu also raised issues about coverage and limits of liability, and asked the Krafchows for additional information about their claims.

The parties disagreed on the amount of the Krafchows' loss (among other things).  The homeowners and dwelling fire policies contained substantially identical appraisal provisions:

> **Appraisal**
>
> If you and we fail to agree on the *amount of loss*, either may demand an appraisal of the *loss*.  In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the ["residence premises"/Described Location] is located.  The appraisers will separately set the *amount of loss*.  If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the *amount of loss*.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will set the *amount of loss*.
>
> Each party will:
>
> **1.**    Pay its own appraiser; and
>
> **2.**    Bear the other expenses of the appraisal and umpire equally.

(Bold italics added.)

The Krafchows invoked the appraisal provisions of the insurance policies, but Dongbu did not name an appraiser.  The Krafchows then sued Dongbu and its claims adjuster, Defendant-Appellant John **Mullen** & Co., Inc. (collectively, **DB**).  The

---

[3]    A reservation of rights "is a notice by the insurer to the insured that the insurer . . . is not waiving any defenses it may have under the [insurance] policy."  First Ins. Co. of Haw. v. State, 66 Haw. 413, 422, 665 P.2d 648, 654 (1983) (original ellipsis omitted) (first quoting Crawford v. Ranger Ins. Co., 653 F.2d 1248, 1252 (9th Cir. 1981); and then citing 7C J. Appleman, Insurance Law & Practice § 4694 (Berdal 1979)).

complaint alleged that Dongbu breached the insurance policies by failing to participate in the appraisal process.[4]

Dongbu's answer asserted these affirmative defenses:

> 38. This action is barred by the terms and conditions in the subject policies.
>
> . . . .
>
> 40. Coverage under the subject policies is barred in whole or in part by the terms, exclusions, conditions, and limitations contained or incorporated in such policy, including any and all endorsements.
>
> . . . .
>
> 42. [The Krafchows]' claims for additional damages are barred to the extent [their] claims are for losses or damage that were not covered or excluded under the Policy.
>
> . . . .
>
> 57. To the extent that [the Krafchows] breached or failed to comply with the terms and conditions of the subject policies, [they] are barred from recovery.
>
> . . . .
>
> 58. To the extent that [the Krafchows], or someone acting on [their] behalf, has [sic] concealed, misrepresented or negligently failed to disclose material facts in their applications and/or claims for the purpose of inducing [Dongbu] to pay benefits, any claims for coverage under such policy are barred.

The Krafchows filed a motion to compel appraisals. DB opposed the motion. DB argued it was premature to appraise the amount of loss because coverage issues had not been resolved. The Krafchows' reply memorandum stated:

> To the extent that [DB], who have already paid out over $300,000 in covered losses to the KRAFCHOWS, believes there is information which would preclude coverage, that is a question which is separate from appraising the value of the loss. ***The appraisal of the claim only establishes the value***

---

[4] The complaint also alleged that DB: breached the implied covenant of good faith and fair dealing; breached a fiduciary duty to the Krafchows; intentionally or negligently inflicted emotional distress upon the Krafchows; committed unfair and deceptive acts and practices in violation of Hawaii Revised Statutes (**HRS**) § 480-2; negligently failed to adjust the Krafchows' claims; and committed consumer fraud elder abuse in violation of HRS § 480-13.5. The circuit court stayed proceedings on those claims pending the disposition of these appeals.

> ***of the loss and does not go to coverage. Insurance coverage is outside of the scope of an appraisal.*** <u>Wailua Associates v. Aetna Cas. and Sur. Co.</u>, 904 F.Supp. 1142 (D. Haw., 1995) (stating the appraisal panel should not consider issues pertaining to coverage and liability under the insurance policy as these issues are beyond the scope of the parties['] agreement to arbitrate).

(Emphasis added.)

The circuit court granted the motion to compel appraisal, without referring to insurance coverage. The Krafchows and Dongbu each appointed an appraiser: the Krafchows appointed Chris **Arnold**; Dongbu appointed Jim **Reinhardt.** The circuit court appointed a retired judge to serve as the umpire.[5]

Arnold and Reinhardt each issued appraisals; they did not agree on the amount of loss. Under the appraisal provisions of the insurance policies, if the appraisers did not agree on the amount of loss, the amount of loss would be the one with which the umpire agrees. The umpire agreed with Arnold's appraisals. Each of Arnold's appraisals stated:

> This is to certify that we, the undersigned, pursuant to our appointment as appraisers and umpire, have carefully examined the documents and/or the damaged property and/or evidence thereof and have determined the following values and loss:

(Bold omitted.)

Each appraisal established replacement cost value, depreciation, and actual cost value for various categories of loss,[6] reduced the appraised amount by a deductible amount, and stated: "This award shall be payable within <u>20</u> calendar days. . . . All prior payments shall be deducted [from] this award."

---

[5] The orders granting the motion to compel and appointing the umpire were entered by the Honorable Peter T. Cahill.

[6] The categories were building; other structures; landscaping; contents; and additional living expense/loss of use.

Each appraisal contained the following notation:

> The undersigned Umpire, pursuant to the footnote on page 2 of the foregoing Appraisal and Award,[7] hereby makes the following notation at the request of appraiser Jim Reinhart [sic]. Mr. Reinhart [sic] has not executed the Award for the reason that, in view of Dongbu Insurance Co. Ltd., the Award includes amounts that are not covered by the applicable policy. More specifically, that the work for which awards are made is prohibited by Maui County Ordinance. The undersigned has forwarded this notation to both appraisers.

The Krafchows moved to confirm the appraisals. DB moved to vacate them. At the hearing, Dongbu argued:

> The function of appraisers is to determine the amount of damage resulting to various items submitted for their consideration. It is certainly not their function to resolve questions of coverage and interpret provisions of the policy.

The Krafchows argued:

> [I]n this particular case, I think Judge Cahill had ordered the appraisal. It was clear there were no restrictions on it.

The circuit court stated:

> [T]he Court determines and rejects the argument that the umpires [sic] exceeded their scope of authority in determining the appraisal amounts. And ***this is pursuant to the Court's order directing such appraisal***.
>
> The Court determines that pursuant to HRS Section 658-23, there are no grounds for vacation of the award on grounds that the arbitrator exceeded the arbitrator's powers. . . .
>
> . . . .
>
> So clearly, the arbitrator's and umpire's decision did have to take into consideration arguments pertaining to scope of coverage and exclusions.

(Emphasis added.)

The circuit court entered orders granting the motion to confirm and denying the motion to vacate, expressly recognizing

---

[7] The footnote stated: "Further detailed documents may be attached to this summary of the award."

that the appraiser's and umpire's values included "consideration [of] . . . scope of [insurance] coverage and exclusions." In CAAP-21-0000513, DB appeals from the order granting the Krafchows' motion to confirm the appraisals. In CAAP-21-0000517, DB originally appealed from the orders[8] denying its motion to vacate the appraisals; on temporary remand the circuit court entered amended orders that denied the motion to vacate and also reconfirmed the appraisals.[9] We consolidated the appeals.

## POINTS OF ERROR

DB contends that the circuit court erred by granting the motion to confirm and denying the motion to vacate the appraisal awards, because the appraiser and the umpire exceeded their authority when they considered insurance coverage issues and decided whether the insurance policies provided coverage for certain claimed loss.

## STANDARDS OF REVIEW

"[T]he scope of an agreement to arbitrate is an issue that a court must decide." Nat'l Union Fire Ins. Co. v. Reynolds, 77 Hawai'i 490, 494, 889 P.2d 67, 71 (App. 1995) (cleaned up). The construction of, and legal effect given to, an arbitration agreement is a question of law reviewed de novo.

---

[8]     The circuit court entered two orders denying DB's single motion to vacate the three appraisals.

[9]     We temporarily remanded the case "to allow for the issuance of an amended order denying the motion to vacate the appraisal awards and reconfirming the appraisal awards under HRS § 658A-23. See Bennett v. Chung, 143 Hawai'i 266, 268, 428 P.3d 778, 780 (2018) (holding that although order denying motion to vacate arbitration award was not appealable under Hawaii Revised Statutes § 658A-28, subsequently-issued, amended order denying motion to vacate was appealable where order also reconfirmed award).

In the future, if a circuit court grants a motion to confirm an arbitration award and denies a motion to vacate the award, we suggest both motions be disposed of in a single order. See HRS § 658A-23(d) (2016); Bennett, 143 Hawai'i at 280, 428 P.3d at 792 ("[I]n the interest of judicial economy, absent the filing of a motion to vacate, a circuit court should wait to file an order confirming an arbitration award until the ninety-day period in which to file a motion to vacate has elapsed.").

7

Yamamoto v. Chee, 146 Hawaiʻi 527, 533, 463 P.3d 1184, 1190
(2020) (quoting Brown v. KFC Nat'l Mgmt. Co., 82 Hawaiʻi 226,
239, 921 P.2d 146, 159 (1996)).  The determination whether an
arbitration agreement is ambiguous is also a question of law
reviewed de novo.  Id.

## DISCUSSION

The appraisal provisions in the insurance policies are
arbitration agreements, subject to Hawaii Revised Statutes (**HRS**)
Chapter 658A.[10]  See Wailua Assocs. v. Aetna Cas. & Sur. Co., 904
F. Supp. 1142, 1148 (D. Haw. 1995) (**Wailua I**) (relying upon
former HRS Chapter 658 and relevant Hawaiʻi case law to determine
what constitutes an "agreement to arbitrate" under the Federal
Arbitration Act) (first citing Hung Wo Ching v. Hawaiian Rests.,
50 Haw. 563, 566, 445 P.2d 370, 372 (1968); then citing Leeward
Bus Co. v. City & Cnty. of Honolulu, 58 Haw. 64, 69-70, 564 P.2d
445, 448-49 (1977); and then citing Loyalty Dev. Co. v. Wholesale
Motors, Inc., 61 Haw. 483, 487-88, 605 P.2d 925, 928 (1980)).

HRS Chapter 658A contains these relevant provisions:

> **Confirmation of award.**  After a party to an
> arbitration proceeding receives notice of an award, the
> party may make a motion to the court for an order confirming
> the award at which time the court shall issue a confirming
> order unless the award is modified or corrected pursuant to
> section 658A-20 ["Change of award by arbitrator"] or 658A-24
> ["Modification or correction of award"] or is vacated
> pursuant to section 658A-23.
>
> **Vacating award.**  (a) Upon motion to the court by a
> party to an arbitration proceeding, the court shall vacate
> an award made in the arbitration proceeding if:
>
> . . . .
>
> (4)   An arbitrator exceeded the arbitrator's
>       powers[.]
>
> . . . .
>
> (d)   If the court denies a motion to vacate an award,

---

[10]     HRS Chapter 658A applies to "an agreement to arbitrate made on or
after July 1, 2002."  HRS § 658A-3 (2016).  The insurance policies were issued
in January and February 2018.

it shall confirm the award . . . .

**Judgment on award; attorney's fees and litigation expenses.** (a) Upon granting an order confirming . . . an award, the court shall enter a judgment in conformity therewith. The judgment may be recorded, docketed, and enforced as any other judgment in a civil action.

HRS §§ 658A-22, -23, -25 (2016).

## I. The Appraiser and the Umpire Had No Power to Decide What Amounts Dongbu Owed to the Krafchows

What issues, if any, are beyond the scope of a contractual agreement to arbitrate depends on the wording of the contractual agreement to arbitrate. An arbitration agreement is interpreted like a contract, and as with any contract, the parties['] intentions control. Further, we have long expressed our disapproval of interpreting a contract such that any provision be rendered meaningless.

County of Hawaii v. UNIDEV, LLC, 129 Hawaiʻi 378, 394-95, 301 P.3d 588, 604-05 (2013) (cleaned up) (emphasis omitted).

The appraisal provisions in the homeowners and dwelling fire policies state that the appraisers and the umpire, if necessary, are to determine the "amount of loss." None of the policies defined the word "loss." Thus, the word "should be interpreted according to [its] plain, ordinary, and accepted sense in common speech unless it appears from the [insurance] policy that a different meaning is intended." Dairy Rd. Partners v. Island Ins. Co., 92 Hawaiʻi 398, 411, 992 P.2d 93, 106 (2000) (cleaned up).

A common meaning of the word "loss" is "decrease in amount, magnitude, value, or degree[.]" Loss, Merriam-Webster, https://www.merriam-webster.com/dictionary/loss (last updated Jan. 30, 2023). The word appears 258 times in the homeowners policy and 149 times in each of the dwelling fire policies — with and without qualifiers.[11] For example, the homeowners policy

_____

[11] According to Merriam-Webster, an alternate definition of "loss" is "the amount of an insured's financial detriment by death or damage that the insurer is liable for[.]" Loss, Merriam-Webster, https://www.merriam-webster.com/dictionary/loss (last updated Jan. 30, 2023). That definition is
(continued...)

provides:[12]

### SECTION I — PERILS INSURED AGAINST

We insure against risk of <u>direct</u> **loss** to property described in Coverages A, B and C, <u>only if</u> that **loss** is a <u>physical loss</u> to property.

<u>We do not insure</u>, however, for **loss**:

    **1.**    Under Coverages A, B and C:

        **a.**    <u>Excluded</u> under Section I — EXCLUSIONS[.]

        . . . .

**B.**    **Coverage C — Personal Property**

We insure for <u>direct physical</u> **loss** to the property described in Coverage **C** caused by any of the following perils <u>unless</u> the **loss** is excluded in Section **I** — Exclusions.

. . . .

### SECTION I — EXCLUSIONS

**A.**    <u>We do not insure</u> for **loss** caused directly or indirectly by any of the following. Such **loss** is <u>excluded</u> regardless of any other cause or event contributing concurrently or in any sequence to the **loss**. These exclusions apply whether or not the **loss** event results in widespread damage or affects a substantial area.

. . . .

### SECTION I - CONDITIONS

**A.**    **Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, <u>we will not be liable</u> in any one **loss**:

---

[11]    (...continued) inconsistent with the language of the insurance policies, which specifically refer to "loss" that is "excluded" or not "covered" or for which Dongbu "will not be liable."

[12]    The homeowners policy is 55 pages long. The dwelling fire policy is 46 pages long. Each contains, in addition to the declarations, a number of notices, schedules, forms, and endorsements, some of which replace or modify the terms or conditions of other portions of the policy. However, "mere complexity" does not create ambiguity. <u>Sturla, Inc. v. Fireman's Fund Ins. Co.</u>, 67 Haw. 203, 209, 684 P.2d 960, 964 (1984). Ambiguity exists "only when the contract taken as a whole, is reasonably subject to differing interpretation." <u>Id.</u> at 209-10, 684 P.2d at 964. The policy provisions material to the disposition of this appeal are not ambiguous.

**1.** To an "insured" for more than the amount of such "insured's" interest at the time of *loss*; or

**2.** For more than the applicable limit of liability.

**B.** **Duties After *Loss***

In case of a *loss* to covered property, <u>we have no duty to provide coverage under this policy</u> if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

. . . .

**C.** ***Loss* Settlement**

In this Condition **C.**, the terms "cost to repair or replace" and "replacement cost" <u>do not include</u> the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section **I** — Property Coverages. <u>Covered</u> property *losses* are settled as follows:

. . . .

**F.** **Other Insurance And Service Agreement**

If a *loss* <u>covered by this policy</u> is also covered by:

**1.** Other insurance, <u>we will pay</u> only the proportion of the *loss* that the limit of liability that applies under this policy bears to the total amount of insurance covering the *loss*[.]

. . . .

**PERSONAL PROPERTY REPLACEMENT COST**
***LOSS* SETTLEMENT**

**A.** **Eligible Property**

**1.** <u>Covered</u> *losses* to the following property are settled at replacement cost at the time of the *loss*:

    **a.** Coverage **C**; and

    **b.** <u>If covered</u> in this policy:

        **(1)** Awnings, outdoor antennas and outdoor equipment; and

        **(2)** Carpeting and household appliances;

    whether or not attached to buildings.

**2.** This method of *loss* settlement will also apply to the following articles or classes of property

> if they are separately described and specifically insured in this policy and not subject to agreed value *loss* settlement:
>
> . . . .
>
> Personal Property Replacement Cost *loss* settlement will not apply to other classes of property separately described and specifically insured.

(Bold italics and underscoring added.)

Similarly, each dwelling fire policy provides:[13]

**PERILS INSURED AGAINST**

**A.  Coverage A - Dwelling And Coverage B - Other Structures**

**1.** We insure against risk of <u>direct physical</u> *loss* to property described in Coverages **A** and **B**.

**2.** <u>We do not insure</u>, however, for *loss*:

**a.** <u>Excluded</u> under General Exclusions[.]

. . . .

**B.  Coverage C - Personal Property**

We insure for <u>direct physical</u> *loss* to the property described in Coverage **C** caused by a peril listed below <u>unless</u> the *loss* is <u>excluded</u> in the General Exclusions.

. . . .

**GENERAL EXCLUSIONS**

**A.** <u>We do not insure</u> for *loss* caused directly or indirectly by any of the following. Such *loss* is <u>excluded</u> regardless of any other cause or event contributing concurrently or in any sequence to the *loss*. These exclusions apply whether or not the *loss* event results in widespread damage or affects a substantial area.

. . . .

**B.** <u>We do not insure</u> for *loss* to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing *loss* to property described in Coverages **A** and **B** <u>not precluded</u> by any other provision in this policy is covered.

. . . .

---

[13] <u>See</u> <u>supra</u> note 12.

**CONDITIONS**

**A.    Policy Period**

This policy applies only to **loss** which occurs <u>during the policy period</u>.

**B.    Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, <u>we will not be liable</u> in any one **loss**:

**1.**    For an amount greater than the interest of a person insured under this policy at the time of **loss**; or

**2.**    For more than the applicable limit of liability.

**C.    Concealment Or Fraud**

We provide coverage <u>to no persons insured</u> under this policy if, whether before or after a **loss**, one or more persons insured under this policy have:

**1.**    Intentionally concealed or misrepresented any material fact or circumstance;

**2.**    Engaged in fraudulent conduct; or

**3.**    Made false statements;

relating to this insurance.

**D.    Duties After _Loss_**

In case of a **loss** to covered property, we have <u>no duty to provide coverage</u> under this policy if the failure to comply with the following duties is prejudicial to us.  These duties must be performed either by you or your representative:

.  .  .  .

**E.    _Loss_ Settlement**

In this Condition **E.**, the terms "cost to repair or replace" and "replacement cost" <u>do not include</u> the increased costs incurred to comply with the enforcement of any ordinance or law <u>except</u> to the extent that coverage for these increased costs is provided in Other Coverage **F.12.** Ordinance Or Law. <u>Covered</u> property **losses** are settled as follows .  .  .  .

(Bold italics and underscoring added.)

Dongbu and the Krafchows disagreed on the amount of the Krafchows' loss because of the wildfire.  The insurance policies require that the amount of loss be determined by the appraisers

and, if necessary, the umpire.  But not all of the Krafchows' loss is necessarily insured or covered under their insurance policies; Dongbu's liability to pay for a "loss" is limited by the coverage provisions, exclusions, and other terms and conditions of the policies.  The appraisal provision does not limit itself to <u>covered</u> loss; it does not preclude appraisal of non-covered or excluded loss, or loss for which Dongbu is otherwise not liable; and it does not empower the appraisers to consider policy or coverage defenses.

Nothing in the appraisal provision empowers the appraisers and umpire to determine whether any part of the "loss" being appraised is or is not covered under the insurance policies.  <u>See, e.g.</u>, <u>Wailua I</u>, 904 F. Supp. at 1149 ("Clearly, the appraisal panel should not consider issues pertaining to coverage and liability under the insurance policy as these issues are beyond the scope of the parties['] agreement to arbitrate."); <u>St. Paul Fire & Marine Ins. Co. v. Wright</u>, 629 P.2d 1202, 1203 (Nev. 1981) ("The function of the appraisers is to determine the amount of damage resulting to various items submitted for their consideration.  It is certainly not their function to resolve questions of coverage and interpret provisions of the [insurance] policy.") (quoting <u>Jefferson Ins. Co. of N.Y. v. Superior Ct. of Alameda Cnty.</u>, 475 P.2d 880, 883 (Cal. 1970)).

The Krafchows argue that Dongbu waived the issue of whether the appraisers and umpire had the power to decide insurance coverage issues because Dongbu failed to appeal from the order granting the Krafchows' motion to compel appraisals.  The argument is without merit.  First, the order granting the motion to compel appraisals was not an appealable order.  <u>See</u> HRS § 658A-28(a) (2016).  Second, the Krafchows' reply memorandum in support of their motion to compel appraisals cited <u>Wailua I</u> and acknowledged that "[t]he appraisal of the claim only establishes the value of the loss and does not go to coverage.  Insurance coverage is outside of the scope of an appraisal."  Accordingly, the order granting the Krafchows' motion to compel appraisals

cannot be interpreted to empower the appraisers and umpire to decide insurance coverage issues. Indeed, the order itself makes no reference to insurance coverage issues.[14]

The insurance policy provisions are not ambiguous because, read as a whole, they are not reasonably subject to differing interpretation with respect to the word "loss." See Sturla, Inc. v. Fireman's Fund Ins. Co., 67 Haw. 203, 209-10, 684 P.2d 960, 964 (1984). Under the circumstances of this case, the unqualified word "loss" in the appraisal provision refers to the Krafchows' loss because of the wildfire, not what Dongbu is obligated to pay under any of the Krafchows' insurance policies. Simply put, the appraisers and umpire had the power to appraise what the Krafchows lost because of the wildfire. The appraisers and the umpire had no power to decide what amounts Dongbu owed to the Krafchows under the insurance policies, because what Dongbu actually owes to the Krafchows depends upon coverage issues that must be decided by the circuit court.

## II. The Appraiser and the Umpire Exceeded Their Powers by Deciding How Much Dongbu Must Pay to the Krafchows, and When the Payment Must Be Made

Citing Tatibouet v. Ellsworth, 99 Hawai'i 226, 233, 54 P.3d 397, 404 (2002), the Krafchows argue that their appraiser (Arnold) and the umpire did not exceed their powers, but made only "mistakes in the application of law and in their findings of fact" that are not a basis to vacate the awards.

It is well-established that "parties who arbitrate a dispute assume 'all the hazards of the arbitration process including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact.'" Tatibouet, 99 Hawai'i at 233, 54 P.3d at 404 (quoting Wayland Lum Constr.,

---

[14]     Dongbu argues that the Krafchows are judicially estopped from taking a legal position contrary to Wailua I, which they cited in support of their successful motion to compel appraisals. We need not address the judicial estoppel argument.

Inc. v. Kaneshige, 90 Hawaiʻi 417, 422, 978 P.2d 855, 860 (1999)).  The Tatibouet court also noted, however:

> [T]his court has, thus far, reserved the phrase "exceeded their powers" as reference to arbitrators' improper consideration of matters outside the scope of the arbitration agreement:
>
> > [P]recisely because "the scope of an arbitrator's authority is determined by agreement of the parties," it follows that "[a]n arbitrator must act within the scope of the authority conferred upon him by the parties and cannot exceed his power by deciding matters not submitted." Clawson v. Habilitat, Inc., 71 Haw. 76, 78, 783 P.2d 1230, 1231 (1989) (citations omitted).  Accordingly, . . . where an arbitrator has exceeded his or her powers by deciding matters not submitted, this court has held, pursuant to HRS § 658-9(4), that the resulting arbitration award must be vacated. Brennan v. Stewarts' Pharmacies, Ltd., 59 Haw. 207, 223, 579 P.2d 673, 681-82 (1978).
>
> Mathewson[ v. Aloha Airlines, Inc.], 82 Hawaiʻi [57], 75, 919 P.2d [969], 987 [(1996)] (some alterations in original and bracket omitted).

Id. at 235, 54 P.3d at 406.

The appraisals themselves do not reveal whether Arnold or the umpire made mistakes in finding facts or applying the law. Arnold and the umpire may or may not have made factual or legal mistakes when they valued what the Krafchows lost, but that is not at issue in these appeals.  At issue is Arnold's and the umpire's decision about how much Dongbu owed the Krafchows under the insurance policies, and when Dongbu's payment must be made. The appraisals specifically state how much Dongbu was to pay the Krafchows (after subtraction of deductibles and prior payments), and when payment was to be made.  Those awards could not have been made without considering the scope of insurance coverage. They show that Arnold and the umpire purported to appraise what they believed to be **_covered_** loss, because under the insurance policies Dongbu is not obligated to pay uncovered or excluded loss, or loss for which Dongbu is otherwise not liable.  Indeed, in granting the Krafchows' motion to confirm and denying DB's motion to vacate the appraisals, the circuit court stated that the appraiser and umpire included "consideration . . . of [insurance] coverage and exclusions."

Rather than issue awards directing Dongbu to pay, Arnold and the umpire should have appraised the value of what the Krafchows lost because of the wildfire, irrespective of insurance coverage.  See Koolau Radiology, Inc. v. Queen's Med. Ctr., 73 Haw. 433, 834 P.2d 1294 (1992) (arbitration agreement limited scope of arbitration to determining lease values and did not give arbitrator power to decide legal issues such as statute of frauds or parol evidence rule related to alleged oral agreement); Wailua Assocs. v. Aetna Cas. & Sur. Co., 27 F. Supp. 2d 1208, 1211 (D. Haw. 1997) (**Wailua II**) ("The Court recognizes that the Award includes a number of 'appraised values' and that there are additional issues to be adjudicated which may or may not affect the final amount to be awarded under the policy."); cf. Nat'l Union Fire Ins. Co. v. Reynolds, 77 Hawaiʻi 490, 494, 889 P.2d 67, 71 (App. 1995) (holding, under arbitration clause of underinsured motorist policy, that arbitration on question of whether insured was "legally entitled to recover damages" is limited to determining tortfeasor's fault and amount of insured's damages, and did not include whether underinsured motorist coverage applied under any particular circumstance).

The Krafchows also argue that Dongbu waived its right to challenge the appraisals because Dongbu's statement of the points of error on appeal did not include the circuit court's denial of Dongbu's request to stay enforcement of the appraisal awards.  The argument lacks merit.  Dongbu challenges the entirety of the appraisals, which include provisions that "[t]his award shall be payable within 20 calendar days."  Under HRS § 658A-25 the Krafchows could have, but did not, request entry of a judgment on each of the appraisals.  The resultant judgments could have been recorded and executed against Dongbu.  When Dongbu filed its notice of appeal before the Krafchows moved for entry of a judgment on the order confirming the appraisals, Dongbu's stay request became moot because there were no potential enforcement procedures to stay.

17

## CONCLUSION

For the foregoing reasons, we hold that the Krafchows' appraiser and the umpire exceeded their powers by deciding what amounts Dongbu owed to the Krafchows, rather than appraising the value of the Krafchows' loss because of the wildfire. Because the appraiser and umpire exceeded their powers, the circuit court erred by granting the Krafchows' motion to confirm the appraisals, and by denying DB's motion to vacate the appraisals. The following orders are vacated: **(1)** "Order Granting Plaintiffs' Motion to Confirm Appraisal Summary and Awards" entered on July 26, 2021; **(2)** "Amended Order Denying Defendants' Motion to Vacate and/or Modify Three Appraisal Awards or, in the Alternate, to Stay, and Reconfirming the Appraisal Awards" entered on June 13, 2022; and **(3)** "Amended Order Denying Defendants' Motion to Vacate and/or Modify Three Appraisal Awards and Reconfirming Appraisal Awards" entered on June 14, 2022. This case is remanded to the circuit court for further proceedings.

On the briefs:

Wesley H. H. Ching,
Nadine Y. Ando,
Jennifer Cook Clark,
for Defendants-Appellants
Dongbu Insurance Co., Ltd.,
nka DB Insurance Co., Ltd.
and John Mullen & Co., Inc.

Peter N. Martin,
Thomas C. Zizzi,
for Plaintiffs-Appellees
Edmond Krafchow and Kathleen
Krafchow.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge