NATIONAL EXPOSITIONS, INC. and
Ken Penn Amusements, Inc.,
Plaintiffs,

v.

Claude DuBOIS, et al., Defendants.

Civ. A. No. 81–2188.

United States District Court,
W.D. Pennsylvania.

March 29, 1985.

See also, D.C., 97 F.R.D. 400.

K. Lawrence Kemp, New Kensington, Pa., for plaintiffs.

Richard Martin, Pittsburgh, Pa., for Al Feldman.

Terry C. Cavanaugh, Pittsburgh, Pa., and Eli Whitney Debevoise, II, William D. Rogers, Michael T. Shor, Washington, D.C., for Republic of Venezuela.

## MEMORANDUM OPINION

MANSMANN, District Judge.

This matter comes before the Court on the Motion to Dismiss of the Republic of Venezuela, on Plaintiffs' Motion for Leave to Amend Complaint and on the Motion to Dismiss of Al Feldman. For the reasons set forth below, the Republic of Venezuela's Motion to Dismiss is granted and Plaintiffs' Motion for Leave to Amend Complaint is denied. Also for the reasons stated herein, Al Feldman's Motion to Dismiss is granted.

Although initially this matter involved forty-seven defendants, this action has been dismissed as to some Defendants, transferred as to others and defaults have been entered with respect to still others. The two remaining Defendants, the Republic of Venezuela ("Venezuela") and Al Feldman ("Feldman")[1] have made separate applications for dismissal, each of which will be discussed separately below.

*Venezuela*

Venezuela has applied to this Court for an order dismissing this action against it, claiming, *inter alia,* a lack of both personal and subject matter jurisdiction as well as defective service of process and improper venue.

In response to the jurisdictional claims, Plaintiffs have impliedly conceded that their original Complaint does not have adequate jurisdictional allegations by moving to amend their Complaint against Venezuela. Venezuela opposes the amendments, but asserts that even if this Court were to permit the amendments, this Court would be devoid of jurisdiction, both subject matter and personal. Both parties have submitted affidavits on the jurisdictional issue.[2]

1. Although Venezuela and Feldman are the only remaining Defendants, for some inexplicable reason, Plaintiffs, in moving to amend the Complaint, proposed an amended caption which contains individuals and entities which are no longer Defendants to this action. Specifically, the following defendants, although listed in the proposed amended caption, have been dismissed from this case pursuant to the May 26, 1983 Orders of this Court: Claude DuBois; Amusements Spectaculaires, Ltee.; Salon du Commerce; Richard Marchant; Leisure Attractions, Inc.; Fred Hollingworth; Adco, Inc.; Wilbert C. Morey, Sr.; Mariner's Landing, Inc.; Marine Pier Associates; Charles Edens; Edens Enterprises, Inc.; Michael Jebrock; Ocean City Amusements; and Victor Rios. Further, with respect to Mihel Vaimberg, a default was taken against him on May 31, 1983. Although a default had been taken against Feldman on May 23, 1982, on Feldman's Motion, the default (and/or default judgment) was set aside by the Order of this Court dated July 17, 1984. Thus, when the instant motions were made, Feldman and Venezuela were the only two remaining Defendants, notwithstanding Plaintiffs' assertion to the contrary.

2. In deciding this Motion to Dismiss, it was necessary for this Court to look beyond the pleadings. This matter involves a foreign sovereign as a defendant, making subject matter jurisdiction available only in certain situations under the Foreign Sovereign Immunities Act (*see,* n. 3, *infra* ). Once Venezuela raised the defense of a lack of subject matter jurisdiction, both

■ The Foreign Sovereign Immunities Act of 1976 ("FSIA")[3] provides, with some exceptions[4] that a foreign state[5] is normally immune from suit in this country's courts. *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). Moreover, unless at least one of the specified exceptions is applicable, in a given situation, the district court is without both subject matter and personal jurisdiction. *Id.*, 103 S.Ct. at 1967, n. 5. The *Verlinden* Court explained the jurisdictional bases of the FSIA:

> Under the Act, however, both statutory subject matter jurisdiction (otherwise known as 'competence') and personal jurisdiction turn on application of the substantive provisions of the Act. Under § 1330(a), federal district courts are provided subject matter jurisdiction if a foreign state is 'not entitled to immunity either under sections 1605–1607 ... or under any applicable international agreement;' § 1330(b) provides personal jurisdiction wherever subject matter jurisdiction exists under subsection (a) and service of process has been made under § 1608 of the Act.

*Id.*

Thus, the immediate question for resolution by this Court is whether Venezuela's conduct falls into one of the enumerated exceptions of the FSIA. Therefore, this Court will examine the proposed amended complaint at the outset, because if it contains "incurable jurisdiction defects" as

Venezuela has asserted, then this Court would have no choice but to deny the Motion to Amend and to enter judgment in favor of Venezuela for want of jurisdiction. Accordingly, the Court will scrutinize the "exceptions" claimed by Plaintiffs to be applicable and will determine if any give this Court subject matter and personal jurisdiction.

### a. *28 U.S.C. § 1605(a)(2)*

In the Fourth and Seventh Counts of the proposed amended complaint, the only counts against Venezuela, Plaintiffs allege that their claims fall within one of the exceptions to sovereign immunity set forth in the third clause of 28 U.S.C. § 1605(a)(2).[6]

In this connection, Plaintiffs allege:

1. The property of [Plaintiffs] described on Exhibit "A" to the original Complaint was converted by the conduct of Defendant Republic of Venezuela in [sic] February 10, 1980.

2. The said conversion was a part of the commercial activity of the said Defendant; namely, the conduct of international commerce by boat, which activity is carried on by the said Defendant within the United States.

3. The said conversion had a direct effect in the United States in that it prevented Plaintiffs from utilizing this property to fulfill their business commit-

---

parties were given the opportunity to make submissions, and both parties submitted affidavits with their papers. Although this Court has not excluded these affidavits, this motion is not treated as one for summary judgment, but rather remains one for dismissal as FED.R.CIV.P. 12(b) or (c) does not authorize such conversion in this instance. However, FED.R.CIV.P. 12(h)(3) permits the Court to consider such material outside the pleadings while not converting a motion contesting subject matter jurisdiction to one for summary judgment. Consequently, this Court scrutinized the affidavits supplied by both parties to determine if subject matter jurisdiction exists.

3. Pub.L. 94–583, 90 Stat. 2891, *codified* at 28 U.S.C. §§ 1330, 1332(a)(2)–(a)(4), 1391(f), 1441(d) and 1602–1611.

4. The exceptions to immunity are specified in 28 U.S.C. §§ 1605 and 1607.

5. It is undisputed that Venezuela is a "foreign state" as defined in 28 U.S.C. § 1603(a).

6. 28 U.S.C. § 1605(a)(2) provides in pertinent part:
   (a) foreign state shall not be immune from the jurisdiction of the courts of the United States ... in any case ...
   (2) ... upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.
   ("clause 3").

ments within the United States and caused the insolvency of [Plaintiffs].

■ Therefore, this Court must initially decide if the activity of Venezuela, *i.e.*, the refusal of docking privileges to a tug boat and barge and the impoundment of certain of Plaintiff's property constitutes "commercial activity." After carefully considering this question, this Court concludes that the activity complained of is not "commercial activity" within the meaning of clause 3 of 28 U.S.C. § 1605(a)(2). In so finding, this Court relies on the following factors.

Under the FSIA, "commercial activity" is defined in 28 U.S.C. § 1603(d) as "either a regular course of commercial conduct or a particular commercial transaction or act." Further, the statute provides that "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."

The proposed amended complaint alleges that Plaintiffs' property was "converted by the conduct of the Defendant Republic of Venezuela in [sic] February 10, 1980." In determining whether this conduct was "commercial activity", under the FSIA, the Court must look at the conduct itself without regard to its purpose, in conformity with 28 U.S.C. § 1603(d).

■ Further, in determining whether jurisdiction exists under clause 3 of 28 U.S.C. § 1605(a)(2), this Court shall examine only the conduct of Venezuela in connection with the February 10, 1980 port activity centered around Plaintiffs' property, not general activities of Venezuela unrelated to Plaintiffs' claims. As stated by the United States Court of Appeals for the Third Circuit, "[t]he mere pursuit of commercial activity affecting the United States

does not fully satisfy § 1605(a)(2), however. *It is essential that there be a nexus between the plaintiffs' grievance and the sovereign's commercial activity."* Velidor v. L/P/G Benghazi, 653 F.2d 812, 820 (3d Cir.1981) *cert. dismissed,* 455 U.S. 929, 102 S.Ct. 1297, 71 L.Ed.2d 474 (1982) (citation omitted, emphasis added). Therefore, Plaintiffs' allegations that Venezuela engages in (unrelated) activity which they claim to be commercial in nature is irrelevant to this matter and will not be considered here.[7]

The activity complained of relative to this lawsuit is the alleged failure of Venezuela to grant permission for a tug and barge (retained by Plaintiffs) to dock in the Port of Maracaibo in February of 1980. Plaintiffs further assert that this refusal prevented them from loading their equipment on the barge and from removing it from Venezuela, where it still remains [under an order of attachment], notwithstanding demands for its return.[8]

In the Affidavit of Thomas Harringan, Plaintiffs concede that the Port of Maracaibo is operated by the Instituto Nacional de Puertos ("INP"), a state agency which is Venezuela's National Institute of Ports. They argue that the INP "imposes a wharfage handling charge comparable to terminal service charges imposed by private companies at other ports",[9] and that this is "commercial activity" under the FSIA.

Without determining whether such a fee is charged by Venezuela, this Court will not consider this argument because it is irrelevant to this consideration as it is not part of and has no nexus to the questioned activity, *i.e.*, the failure to grant dockage to the vessels and the subsequent impoundment of Plaintiff's property.[10]

---

7. In this connection, Plaintiffs allege that Venezuela has various contacts with Pennsylvania, none of which are alleged to have any relationship to the instant suit. These allegations include: the ownership of the operation of airplanes and boats which utilize Philadelphia as a destination point; the maintenance of a place of business in Philadelphia and the solicitation of tourism in Pennsylvania.

8. Affidavit of Ronald D. Sanders at ¶¶ 7, 8, 10, 14 and 18.

9. Affidavit of Thomas Harrigan at ¶¶ 3 and 4.

10. In any event, Plaintiffs have not claimed that a wharfage fee was imposed against them.

After considering the other affidavits submitted by the Plaintiffs, this Court finds that those affiants are not competent to make most of the assertions contained in their respective affidavits. The affidavits of Alejandro Amado and K. Lawrence Kemp are both conclusory and/or not based on personal knowledge. However, even if this Court were to accept the statements as true, all of the affidavits submitted by Plaintiffs fail to demonstrate factually that the activity is "commercial" under clause 3 of 28 U.S.C. § 1605(a)(2).

In support of its position, Venezuela has submitted the Affidavit of Candido Perez Mendes, the President of INP. The Mendes Affidavit states that in Venezuela the operation and regulation of ports is a state responsibility, which responsibility has been assigned to the INP.[11] The affidavit further asserts that with respect to each port, the person in charge is an INP official known as the Port Director,[12] and that the Port Directors have "discretionary authority to deny docking privileges to any ship, barge or tug boat." [13] It also states that the INP is and has been since February 10, 1980 the "official depository" of Plaintiffs' property.[14] (The Mendes Affidavit additionally states reasons why the Plaintiffs' property was attached and its present status. However, since the purpose of the activity is not part of this Court's inquiry in this "commercial activity" determination, it will not be considered.)

Accordingly, based upon the foregoing, this Court finds that the "commercial activity" exception to sovereign immunity set forth in clause 3 of 28 U.S.C. § 1605(a)(2) is

**11.** Affidavit of Candido Perez Mendes at ¶¶ 4 and 5.

**12.** *Id.* at ¶ 7.

**13.** *Id.* at ¶ 8.

**14.** *Id.* at ¶ 11.

**15.** 28 U.S.C. § 1605(a)(3) provides in pertinent part:
(a) A foreign state shall not be immune from jurisdiction of the courts of the United States ... in any case ...

inapplicable here and not available to the Plaintiffs.

b. *28 U.S.C. § 1605(a)(3)*

In the Fourth and Seventh Counts of the proposed amended complaint, Plaintiffs also allege that their claims fall within another of the exceptions set forth in the FSIA, specifically, one contained in 28 U.S.C. § 1605(a)(3).[15]

In this connection, Plaintiffs allege:

1. The said property was taken in violation of international law.

2. The said property is now held by an agency or instrumentality engaged in a commercial activity in the United States.

3. In taking Plaintiffs' property Defendant Republic of Venezuela violated international law by failing to make prompt, adequate and effective compensation to Plaintiff.

The plain language of the applicable portion of 28 U.S.C. § 1605(a)(3) requires the satisfaction of three elements before an exception to the general rule of foreign sovereign immunity may be found under this subsection: (1) the subject property must be taken in violation of international law; (2) the property taken must be "owned or operated by an agency or instrumentality of the foreign state"; and (3) that "that agency or instrumentality is engaged in commercial activity in the United States". The Court will consider the third element initially.

Section 1603(b) defines "agency or instrumentality" [16] and "commercial activity

(3) in which rights in property taken in violation of international law are in issue and ... that property ... is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

**16.** 28 U.S.C. § 1603(b) provides in pertinent part:
(b) An 'agency or instrumentality of a foreign state' means an entity—
(1) which is a separate legal person, corporate or otherwise, and

carried on in the United States by a foreign state" is defined in 28 U.S.C. § 1603(e).[17]

In applying the definition of "agency or instrumentality" set forth in 28 U.S.C. § 1603(b) to the facts set forth by Venezuela in the Mendes Affidavit, this Court finds that the INP is an "agency or instrumentality" within the meaning of the FSIA.[18]

■ With respect to whether the INP may be deemed to have "engaged in commercial activity in the United States, the fact that Venezuela may have a state-owned airline or shipping company which may do business in this country [19] has no bearing on the instant case. The INP is the entity under scrutiny and in this context it has no relation to either the airline or the shipping company.[20] The INP does not operate outside of Venezuela,[21] nor do Plaintiffs claim this to be the case.

Based on the aforementioned, this Court concludes that the INP cannot be deemed to have engaged in "commercial activity in the United States" under 28 U.S.C. § 1603(a)(3).[22] Having found this element of the statute not to be satisfied, this Court need not examine the other two elements since all three are required before an exception can be found under this portion of 28 U.S.C. § 1605(a)(2).

Accordingly, the exception to 28 U.S.C. § 1605(a)(3) is also inapplicable to Venezuela in this context and unavailable to Plaintiffs.

#### c. *22 U.S.C. § 2370(e)(2)*

In their proposed amended complaint, Plaintiffs also allege 22 U.S.C. § 2370(e)(2) [23] as a basis for jurisdiction.

■ This Court finds this to be wholly without merit. By its terms, 22 U.S.C. § 2370(e)(2) does not confer jurisdiction. Moreover, as noted above, 28 U.S.C. § 1330 alone confers the district courts with subject matter jurisdiction in actions against foreign states so long as "the foreign state

---

(2) which is an organ of a foreign state or political subdivision thereof ... and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

**17.** 28 U.S.C. § 1603(e) provides:

(e) A 'commercial activity carried on in the United States by a foreign state' means commercial activity carried on by such state and having substantial contact with the United States.

**18.** The following leads the Court to this conclusion: (1) the INP is a separate legal entity (¶ 6 of the Mendes Affidavit); (2) the INP is an "organ" of Venezuela (¶¶ 4 and 5 of the Mendes Affidavit); and (3) the INP is clearly "neither a citizen of a State of the United States ... nor created under the laws of any third country."

**19.** This Court is not making the finding that either entity does business in this country, but rather is merely taking this allegation to be true only for the purpose of this argument.

**20.** See ¶ 14 of the Mendes Affidavit.

**21.** Id. at ¶ 12.

**22.** Therefore, this Court need not and does not reach the issue of whether there is a nexus requirement between the activity complained of in the litigation, and the "agency['s] or instru-

mentality['s] ... commercial activity in the United States" under 28 U.S.C. § 1605(a)(3).

**23.** 22 U.S.C. § 2370(e)(2) provides:

(2) Notwithstanding any other provision of law, no court in the United States shall decline on the ground of the federal act of state doctrine to make a determination on the merits giving effect to the principles of international law in a case in which a claim of title or other right to property is asserted by any party including a foreign state (or a party claiming through such state) based upon (or traced through) a confiscation or other taking after January 1, 1959, by an act of that state in violation of the principles of international law, including the principles of compensation and the other standards set out in this subsection: *Provided,* That this subparagraph shall not be applicable (1) in any case in which an act of a foreign state is not contrary to international law or with respect to a claim of title or other right to property acquired pursuant to an irrevocable letter of credit of not more than 180 days duration issued in good faith prior to the time of the confiscation or other taking, or (2) in any case with respect to which the President determines that application of the act of state doctrine is required in that particular case by the foreign policy interests of the United States and a suggestion to this effect is filed on his behalf in that case with the court.

(Emphasis in Original.)

is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement". Therefore, Plaintiffs' argument that 22 U.S.C. § 2370(e)(2) provides a jurisdictional basis for suit against Venezuela is without merit and is rejected by this Court.

Therefore, based upon all of the foregoing, since the original Complaint fails to allege adequate jurisdictional bases over Venezuela and since this Court has found the FSIA exceptions to sovereign immunity alleged by Plaintiffs in their proposed amended complaint to be inapplicable, this Court is devoid of both subject matter and personal jurisdiction over Venezuela. Accordingly, the Plaintiff's Motion to Amend Complaint is denied and Venezuela's Motion to Dismiss is granted. Accordingly, the other arguments of Venezuela submitted in support of their Motion to Dismiss need not be considered.

*Feldman*

Feldman has moved this Court for an order dismissing this action against him claiming: (1) that this Court lacks *in personam* jurisdiction over him; (2) that service of process over him was insufficient to permit this Court to invoke personal jurisdiction over him; (3) that the Complaint fails to comply with FED.R.CIV.P. 8(a); and (4) that the Complaint fails to state a claim against him upon which relief may be granted.

In his affidavit, Feldman denies ever having conducted any business in Pennsylvania at any time.

In opposing this motion the Plaintiffs concede that "the only contacts Feldman had with Pennsylvania were those of his partners and his unrelated business trip to Pittsburgh in the Winter of 1980–1981." [24] Indeed Plaintiffs' papers are devoid of any factual statements demonstrating personal jurisdiction over Feldman, but instead contain bare, unsubstantiated allegations.

**24.** Plaintiffs' "Memorandum of Law in Support of their Response to the Motion to Dismiss of Defendant Al Feldman" at 1.

■ In order to exercise personal jurisdiction over a nonresident who has challenged a court's jurisdiction, the Court must find the existence of "certain minimum contacts" between the nonresident and the forum "such that the maintenance of suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940).

Moreover,

[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.... it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), citing *International Shoe Co. v. Washington*, 326 U.S. at 319, 66 S.Ct. at 159.

Thus, "the inquiry must focus on 'the relationship among the defendant, the forum, and the litigation'". *Rush v. Savchuk*, 444 U.S. 320, 327, 100 S.Ct. 571, 576, 62 L.Ed.2d 516 (1980), quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977).

■ Moreover, "[i]t is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into Court there". *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) (citations omitted).

■ Further, a defendant's challenge to the court's ability to invoke personal jurisdiction imposes upon the Plaintiff the burden of coming forward with facts in sup-

port of such jurisdiction. *Compagnie des Bauxites de Guinea v. Insurance Co. of North America*, 651 F.2d 877 (3d Cir.1981) *aff'd on other grounds*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

■ In the instant case, Plaintiffs have made no such showing. Moreover, even if this Court were to accept Plaintiffs' unsworn allegations as true, the Pennsylvania "contacts" claimed by them are wholly insufficient as a jurisdictional predicate. Accordingly, this Court has no choice but to find that it lacks personal jurisdiction over Feldman.[25]

Therefore, based upon the foregoing Feldman's Motion to Dismiss is granted. Accordingly, the other arguments of Feldman need not be addressed.

An appropriate Order shall issue.

---

**25.** Generally, in determining if long-arm jurisdiction exists this Court would engage in a two-step process, *i.e.*, (1) determine if the nonresident defendant's conduct falls within the ambit of the long-arm statute, 42 PA.CONS.STAT. § 5322, and if so, (2) determine whether the assertion of personal jurisdiction comports with due process of the Constitution. *See, e.g., Columbia Metal Culvert Co. v. Kaiser Industries Corp.*, 526 F.2d 724 (3d Cir.1975). However, this two-step process was not done in this case because Feldman's lack of "minimum contacts" was so blatent and because Plaintiffs failed to set forth *any* factual statements demonstrating this Court's *in personam* jurisdiction over Feldman. Accordingly, the analysis was substantially abridged.