**WAILUA ASSOCIATES, Plaintiff,**

v.

**The AETNA CASUALTY & SURETY COMPANY, Defendant.**

**No. Civ. 94–00446 ACK.**

United States District Court,
D. Hawai'i.

April 24, 1998.

David A. Nakashima, Alston Hunt Floyd & Ing, Honolulu, HI, Mark L. Tuft, Stephen D.

Kaus, Cooper White & Cooper, San Francisco, CA, for Wailua Associates, a California limited partnership, plaintiff.

Dianne G. Jagmin, Case & Lynch, Honolulu, HI, G. Edward Rudloff, Jr., Marjie D. Barrows, Gordon & Rees, San Francisco, CA, Paul A. Lynch, Lynch Ichida Thompson & Kim, Honolulu, HI, Lyle M. Ishida, Tom & Petrus, Honolulu, HI, Marjie D. Barrows, Rudloff Wood & Barrows, LLP, San Francisco, CA, for Aetna Casualty & Surety Co., The, a Connecticut corporation, defendant.

Dianne G. Jagmin, Case & Lynch, Honolulu, HI, G. Edward Rudloff, Jr., Gordon & Rees, San Francisco, CA, Paul A. Lynch, Lynch Ichida Thompson & Kim, Honolulu, Hi, G. Edward Rudloff, Jr., Marjie D. Barrows, Rudloff Wood & Barrows, LLP, San Francisco, CA, for Aetna Casualty & Surety Co., The, counter-claimant.

Paul Alston, David A. Nakashima, Alston Hunt Floyd & Ing, Honolulu, HI, for Wailua Associates, counter-defendant.

Dianne G. Jagmin, Case & Lynch, Honolulu, HI, G. Edward Rudloff, Jr., Marjie D. Barrows, Gordon & Rees, San Francisco, CA, Marjie D. Barrows, Rudloff Wood & Barrows, LLP, San Francisco, CA, for Aetna Casualty & Surety Co., The, counter-claimant.

David A. Nakashima, Alston Hunt Floyd & Ing, Honolulu, HI, Mark L. Tuft, Stephen D. Kaus, Cooper White & Cooper, San Francisco, CA, for Wailua Associates, counter-defendant.

Dianne G. Jagmin, Case & Lynch, Honolulu, HI, G. Edward Rudloff, Jr., Marjie D. Barrows, Gordon & Rees, San Francisco, CA, Paul A. Lynch, Lynch Ichida Thompson & Kim, Honolulu, Hi, Lyle M. Ishida, Tom & Petrus, Honolulu, HI, Marjie D. Barrows, Rudloff Wood & Barrows, LLP, San Francisco, CA, for Aetna Casualty & Surety Co., The, counter-claimant.

David A. Nakashima, Alston Hunt Floyd & Ing, Honolulu, HI, Mark L. Tuft, Stephen D. Kaus, Cooper White & Cooper, San Francisco, CA, for Wailua Associates, counter-defendant.

*ORDER DENYING PLAINTIFF'S MO-TION FOR PARTIAL SUMMARY JUDGEMENT, GRANTING IN PART DEFENDANT'S MOTION TO STRIKE AND GRANTING IN PART DEFEN-DANT'S MOTION TO DISMISS*

KAY, Chief Judge.

## STATEMENT OF FACTS

On or about September 11, 1992, the Coco Palms Resort on the island of Kauai sustained damage as a result of Hurricane Iniki. The Coco Palms Resort is owned by plaintiff Wailua Associates ("Wailua"). From November 1, 1991, through November 1, 1992, the Coco Palms Resort was insured by defendant, Aetna Surety and Casualty Company ("Aetna") under a Custom Property Coverage Policy (the "Policy"). The Policy states that Aetna shall pay "for the direct physical loss of or damage to covered property caused by or resulting from a covered cause of loss." In addition to covering damage caused by Hurricane Iniki, the Policy provided coverage for the increased cost of repair or replacement caused by enforcement of ordinances and codes, e.g., Kauai Flood Plain Management Act, Ordinance 630 ("Ordinance 630").

After Hurricane Iniki, Wailua furnished Aetna with notice and proof of its losses. Aetna denied portions of Wailua's claim pertaining to: (1) coverage issues; (2) actual cash value ("ACV") of the Coco Palms Resort; (3) damages sustained by Hurricane Iniki; and (4) repair costs. On May 25, 1994, Wailua, pursuant to the provisions of the Policy, demanded an appraisal to assess the property value and amount of loss. On the same day, Wailua filed suit against Aetna to enforce its demand.

On January 19, 1995, this Court ruled that the parties' appraisal agreement was an agreement to arbitrate covered by the Federal Arbitration Act ("FAA"). Therefore, the parties are entitled to a fundamentally fair hearing, i.e., the right to adequate notice and the opportunity to present evidence and arguments. *Wailua Assoc. v. The Aetna Casualty & Surety Co.*, 904 F.Supp. 1142, 1148 (D.Haw.1995) ("*Wailua I* "). With respect to the appraisal, this Court ruled that the "the panel is to determine the value of Coco Palms resort prior to the hurricane and the damage sustained by the resort as a result of the hurricane." *Id.* at 1149. The appraisal panel was further directed to consider Ordinance 630. *Id.*

The appraisal commenced in the spring of 1995 and concluded in the fall of 1996 with issuance of the final Award ("Award") on January 10, 1997. Preliminarily, the Award declares the fair market value of the Resort prior to Hurricane Iniki as $19,086,000. The Award then identifies two different time periods ("1st period" and "2nd period," respectively); each of which identifies the ACV of the Resort, the repair costs and the cost of compliance with Ordinance 630. The 1st period represents:

> . . . all costs for repair of damage caused by or resulting from the hurricane had damage mitigation and permanent repair work commenced within the first nine months after the hurricane occurrence on September 12, 1992.

The 2nd period represents:

> . . . all costs for repair, including Repair Cost 1st Period, as of the date of this appraisal based on the damage condition of the buildings as they exist today.

For the 1st period, the Award declares the ACV for resort damage as $5,835,000, repair costs as $9,233,000, and the cost of compliance with Ordinance 630 as $2,000,000. For the 2nd period, the Award declares the ACV for resort damage as $8,432,000, repair costs as $13,618,000, and the cost of compliance with Ordinance 630 as $3,800,000. The Policy provides that Aetna shall pay the repair costs and the costs of compliance with various codes, inclusive of Ordinance 630.

On April 10, 1997, Wailua filed its motion to confirm the Award for the 2nd period only or, in the alternative, to vacate the award. On September 11, 1997, Aetna filed its opposition. On September 26, 1997, the Court denied Wailua's motion and issued an Order Confirming Appraisal Award in its entirety. In confirming said Award, the Court found that the two time period categories

appear to comply with the spirit of this Court's order to determine (1) the fair market value of the resort, and (2) the damage sustained by the resort as a result of the hurricane. Rather than making a determination regarding "mitigation" or "liability," the panel attempted to categorize the losses in a fashion to exclude from the repair figures costs not directly associated with the hurricane. Confirmation Order, p. 6.[1] Furthermore, the Court expressly noted that "numerous legal issues remain, e.g., the duty to mitigate, reimbursement of ACV or repair costs, etc." *Id.* at p. 6, n. 4.

Currently before the Court are two motions. First, on January 6, 1998, Wailua filed its motion for partial summary judgment. Wailua seeks to have the Court declare that all of the amounts determined by the Appraisal Panel for ACV, repair costs and costs of compliance with Ordinance 630 are covered by the Policy, and therefore represent the amounts owed to Wailua subject only to Aetna's mitigation defense. On March 12, 1998, Aetna filed its opposition and Wailua replied on March 19, 1998. Second, on March 2, 1998, Aetna filed its motion to strike and motion to dismiss. Aetna contends that the portions of Wailua's Second Amended Complaint ("SAC") pertaining to bad faith denial of insurance benefits are improper and should be stricken. Aetna additionally contends that Wailua's fourth amended claim for declaratory relief is hypothetical and speculative warranting dismissal for want of jurisdiction. On March 12, 1998, Wailua filed its opposition and Aetna replied on March 19, 1998. This matter came on for hearing on March 30, 1998.

### STANDARD OF REVIEW

**I. *Partial Summary Judgment***

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *T.W. Elec. Serv.*, 809 F.2d at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the

---

1. That is, while Exhibit A to the Appraisal separately categorizes—as to each building and structure—the fair market value as of September 10, 1992, the ACV of damage for the 1st period and for the 2nd period, the FEMA costs as to each period and the repair costs as to each period; the Appraisal Award defines the 1st period repair costs as representing all the costs for repair of damage caused by or resulting from the hurricane had damage mitigation and permanent repair work commenced within the first nine months after the hurricane. On the other hand, the panel defined the 2nd period repair costs as representing all costs for repair, including repair costs 1st period, as of the date of the appraisal based on the damage condition of the buildings as they existed on that date. Thus, the 2nd period repair costs may possibly include costs for some damage not resulting from the hurricane.

grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Serv.,* 809 F.2d at 630–31.

## II. *Motion to Strike*

▮▮▮ Rule 12(f) states a court may strike from the pleading any redundant, immaterial, impertinent or scandalous matter. The rationale behind granting motions to strike is to "avoid ... prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegation any unnecessary notoriety." 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1382, at 715 (2d ed.1990). An allegation is "impertinent" when it is irrelevant and could not be put into evidence between the parties. 2A Moore's Federal Practice, ¶ 12.21[1]. Generally:

Motions to strike allegedly redundant, immaterial, impertinent or scandalous matter are not favored. Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation; if there is any doubt as to whether under any contingency the matter may raise an issue, the motion may be denied.... In suits involving multiple and complex issues, greater latitude in pleading may be allowed, since impertinence may not be so clear.

*Id.* at ¶ 12–207–08 (citations omitted). *See Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993) (citing same), *rev'd on other grounds,* in 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). Grounds for a motion to strike must be readily apparent from the face of the pleadings or from materials that may be judicially noticed. *Id.* at 1528. Similar to a motion for judgment on the pleadings, the court, in considering a motion to strike, views the challenged pleadings in the light most favorable to the plaintiffs. *Hoeft v. Tucson Unified School Dist.,* 967 F.2d 1298, 1301 (9th Cir.1992) (regarding judgment on the pleadings).

## III. *Motion to Dismiss For Lack of Subject Matter Jurisdiction*

▮▮▮ A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may either attack the allegations of the complaint or may be made as a "speaking motion" attacking the existence of subject matter jurisdiction in fact. *Thornhill Publishing Co., Inc. v. Gen'l Tel. & Electronics Corp.,* 594 F.2d 730, 733 (9th Cir.1979). Where the motion to dismiss is a "speaking motion," no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact. *Id.*

▮▮▮ Pursuant to a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court may receive, among the forms of competent evidence, affidavits to resolve any factual dispute. *Biotics Research Corp. v. Heckler,* 710 F.2d 1375, 1379 (9th Cir. 1983); *National Expositions, Inc. v. DuBois,*

605 F.Supp. 1206, 1207–08 n. 2 (W.D.Pa. 1985). The consideration of such evidence does not convert a motion to dismiss into one for summary judgment. *Id.* Moreover, the burden is on the plaintiff to prove, by affidavits or other evidence, that subject matter jurisdiction does in fact exist. *Id.; St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.1989).

## DISCUSSION

### I. *The Issues of Coverage, Mitigation and Causation Are Not Barred By The Doctrine of Issue and Claim Preclusion, Thus Partial Summary Judgment Should Not Issue*

In September of 1996, the Court confirmed the Appraisal Award in its entirety. In its partial summary judgment motion, Wailua alleges that Aetna, by continuing to dispute its liability as to the 2nd period, is engaging in an improper collateral attack upon the Award. Wailua has moved the Court to declare that the amounts reported in the Award reflect damages to Coco Palms Resort "caused by or resulting from Hurricane Iniki, and represent the amount to which Wailua is owed for repair and replacement costs under the insurance policy ... subject to the effect, if any, of Aetna's alleged mitigation defense." Partial Summary Judgment Motion, p.i. Wailua contends that it is merely seeking a determination of the Award's "preclusive effect."

 As a federal court sitting in diversity jurisdiction, the Court is compelled to apply the applicable law of the State of Hawaii pertaining to former adjudication. *Elliot Megdal & Assoc. v. Hawaii Planing Mill, Ltd.,* 814 F.Supp. 898, 906 (D.Haw.1993). The doctrine of claim preclusion, formerly known as res judicata, precludes relitigation of a claim when: (1) the parties in the present action are identical to, or in privity with, the parties in a prior action; (2) the claim asserted in the present action was or could have been raised in that prior action; and (3) a final judgment on the merits was rendered

in that prior action. *Pedrina v. Chun,* 906 F.Supp. 1377, 1399 (D.Haw.1995), *aff'd,* 97 F.3d 1296 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2441, 138 L.Ed.2d 201 (1997). The doctrine of issue preclusion, formerly referred to as collateral estoppel, precludes relitigation of an issue when: (1) the parties in the present action are identical to, or in privity with, the parties in a prior action; (2) the issue asserted in the present action is identical to that actually litigated[2] in the prior action; and (3) there was a final judgment on the merits. *Id.* at 1402. "Claim preclusion thus bars plaintiffs from pursuing successive suits where the claim was either litigated or could have been litigated in the first action. It also bars defendants from pursuing a subsequent action that could have been raised as a defense or counterclaim in the first suit. By contrast, issue preclusion only bars relitigation of particular issues actually litigated and decided in the prior suit." *Id.* at 1399 (citation omitted).

### A. *Same Parties*

The satisfaction of the first requirement, under both doctrines of claim and issue preclusion, is readily apparent. The same parties, Wailua and Aetna, were involved in the ongoing proceedings and the completed appraisal.

### B. *Final Judgment on the Merits*

 The third requirement is easily satisfied as "it cannot be seriously contested that the ... court's confirmation of the ... [appraisal] decision was anything but a final judgment on the merits." *Caldeira v. County of Kauai,* 866 F.2d 1175, 1178 (9th Cir. 1989). A confirmed appraisal or arbitration qualifies as a final judgment that may preclude relitigation via the doctrines of claim and issue preclusion. *Id.* A full discussion of the scope and effect of the Court's confirmation follows in the next section.

### C. *Same Claim or Identical Issue Actually Litigated*

It is undisputed between the parties that only the confirmed Award may be subject to

2. In Hawaii "actually litigated" requires that the parties against whom preclusion is sought had a "full and fair" opportunity to litigate the case.

*Pedrina,* 906 F.Supp. at 1402 (citing to *Morneau v. Stark Enterprises, Ltd.,* 56 Haw. 420, 423, 539 P.2d 472 (1975)).

the rules of former adjudication. Therefore, both parties are precluded from relitigating any of the issues and/or claims previously determined by the Appraisal Panel by virtue of either res judicata or collateral estoppel.

On January 19, 1995, the Court ordered the parties to submit to an appraisal under the arbitration provisions of the Policy. *Wailua Assoc. v. The Aetna Casualty & Surety Co.*, 904 F.Supp. 1142, 1148 (D.Haw. 1995) (*"Wailua I"*). The Court specifically instructed the Appraisal Panel "to determine the value of Coco Palms resort prior to the hurricane and the damage sustained by the resort as a result of the hurricane." *Id.* at 1149. The Court further directed the panel that it may, in its discretion, consider the costs of Ordinance 630. On January 10, 1997, after a lengthy, costly and contentious process, the Appraisal Panel issued its Award. Initially, the Award defines the scope of the 1st and 2nd time periods. The Award then states the fair market value of the Resort prior to the hurricane, the repair costs of the Resort and the costs of compliance with Ordinance 630 for the 1st and 2nd time periods respectively.

In September of 1997, Wailua moved the Court to selectively confirm the Award only as to the 2nd period or, in the alternative, to vacate the Award as exceeding the scope of the panel's authority. The Court, in denying Wailua's motion, confirmed the Award in its entirety, stating that the defined time period properly determined "(1) the fair market value of the resort, and (2) the damage sustained by the resort as a result of the hurricane" without rendering opinions upon "mitigation" or "liability." Confirmation Order, p. 6. In effect, the Court's confirmation of the Award ratified the monetary figures for all stated factors and the methodology of the Appraisal Panel employed therewith. *Caldeira v. County of Kauai*, 866 F.2d 1175

(9th Cir.1989), *cert. denied*, 493 U.S. 817, 110 S.Ct. 69, 107 L.Ed.2d 36 (1989). Thus, under the doctrines of issue and claim preclusion, neither party may seek to revisit the underlying methodologies of the Award or the stated computations. However as fully explained below, each party may challenge application of the Award as to the 2nd period to the extent that the damage is or is not directly attributable to the Hurricane and whether the damage is or is not covered by the Policy.

### D. *Application of Issue and Claim Preclusion*

■ As a preliminarily matter, the Court GRANTS partial summary judgment with respect to the 1st period. After the Court confirmed the Award in September of 1997, Aetna paid all 1st period amounts, $5,735,-000,[3] to Wailua. The Court is satisfied, and both parties agree that, no issues of coverage, mitigation or liability remain as to the 1st period. Therefore, partial summary judgment is proper.

■ Wailua further contends that Aetna, in disputing the extent of its liability as to the 2nd period, is improperly seeking to collaterally attack the merits of the Award. This contention is belied by the facts of the case. At no point through this litigation has the Court expressed any opinion whatsoever regarding the issues of coverage, mitigation, causation or liability. In fact, the Court expressly forbid the panel from considering issues of coverage and/or liability as those issues were "beyond the scope of the parties agreement to arbitrate." *Wailua I*, 904 F.Supp. at 1149. The Court finds the issues of mitigation, coverage and causation to be unresolved, thus Aetna can not be precluded from arguing the extent of liability (if any) during the 2nd period.[4]

---

**3.** This amount represents the total 1st period repair costs less a $100,000.00 deductible.

**4.** At the hearing on this matter, counsel for Wailua argued that the 2nd period costs only reflect damage directly caused by Hurricane Iniki. Wailua's counsel pointed to Exhibit A, specifically to the heading of the 1st and 2nd period figures entitled "Costs from Hurricane." Wailua contends that since the Appraisal Panel expressly

incorporated Exhibit A into the Award, any ambiguity of the definitions for the 1st and 2nd periods should be resolved by looking at the heading. The Court disagrees. The space for the column heading is quite limited, thus the appropriate manner to resolve ambiguity is to ascertain the meaning of the more lengthy and detailed 2nd period definition provided in the Award.

Moreover, the Court notes that if any party is guilty of seeking to improperly revisit the scope of the Award, it is Wailua. The Court, upon Wailua's motion, has already refused to confirm only the portion of the Award that gave it the greatest financial benefit. Wailua, in its current motion, requests the Court to declare that "all costs calculated by the panel are covered by the insurance policy" subject only to a mitigation defense. Wailua's request is a thinly veiled attempt to have the Court revisit the Award and declare the 2nd period as the applicable period. *See, e.g., Sander v. Weyerhaeuser,* 966 F.2d 501 (9th Cir.1992) (holding in relevant part that a later, independent suit was nothing more than an attempt to revisit the underlying arbitration award). The issues of mitigation, liability, coverage and causation remain in dispute precluding summary judgment. Accordingly, Wailua's partial summary motion as to the 2nd period is DENIED.

## II. *Aetna's Motion to Strike Allegations in Wailua's Second Amended Complaint*

Aetna contends that there are two categories of allegations contained in Wailua's SAC that should be stricken: (1) allegations that Aetna acted in bad faith during the pendency of the appraisal; (2) allegations of unfair or deceptive practices in the area of insurance. The Court shall briefly address each of these categories in turn.

### A. *Bad Faith Denial of Insurance Benefits*

 The Hawaii Supreme Court has recently adopted a cause of action for bad faith denial of insurance benefits. In *Best Place, Inc. v. Penn America Ins. Co.,* the Hawaii Supreme Court articulated the standard for a bad faith claim in the insurance context as follows:

> the insured need not show a conscious awareness of wrongdoing or unjustifiable conduct, nor an evil motive or intent to harm the insured. An unreasonable delay in payment of benefits will warrant recovery for compensatory damages under the Gruenberg test. However, conduct based on an interpretation of the insurance con-

tract that is reasonable does not constitute bad faith. In addition, an erroneous decision not to pay a claim for benefits due under a policy does not by itself justify an award of compensatory damages. Rather the decision not to pay a claim must be in "bad faith."

*Best Place, Inc. v. Penn America Ins. Co.,* 82 Hawai'i 120, 920 P.2d 334, 347 (Haw.1996). (citations omitted). The Hawaii Supreme Court based its decision upon the test articulated and adopted by the California Supreme Court in *Gruenberg v. Aetna Insurance Company,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032, 1040 (Cal.1973). The *Gruenberg* Court specified that the

> responsibility is not the requirement mandated by the terms of the policy itself to defend, settle or pay. It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. Where in so doing, it fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing.

*Id.* at 1037, 108 Cal.Rptr. 480. Thus, the claim for bad faith is separate and distinct from the insurance policy. In fact, an insurer who ultimately pays the claim at issue may be held liable for bad faith in the event of unreasonable delay. *Best Place,* 82 Hawai'i at 132, 920 P.2d 334.

Paragraph 15 of the SAC begins "[d]uring the Appraisal, AETNA and its agents acted unreasonably and improperly by among other things ..." Complaint, ¶ 15. Aetna contends that since both parties are precluded from revisiting the findings of the Appraisal Panel, both parties are similarly prevented from raising any argument relating bad faith or improper conduct that allegedly occurred *during* the appraisal process. While the Court has previously found that the parties may not revisit the validity of the Award, specifically the final computations or the underlying methodologies, claims of unreasonable delay are separate and distinct.

Aetna's submission to the appraisal does not absolve it from liability for bad faith as "the trier of fact could reasonably conclude that ... [the insurer] intentionally delayed the appraisal process." *Green v. Internat'l Ins. Co.*, 238 Ill.App.3d 929, 179 Ill.Dec. 111, 605 N.E.2d 1125, 1129 (Ill.App.1992). Moreover, "if an insurer could utilize the appraisal process to shield itself from the consequences of failing to make a reasonable settlement offer ... it would defeat the principles" underlying a separate cause of action for liability outside the insurance policy. *Smithson v. United States Fidelity & Guaranty, Co.*, 186 W.Va. 195, 411 S.E.2d 850 (W.Va.1991).

 In the spirit of the bad faith cause of action adopted in *Best Place*, the Court finds that in the context of the Appraisal, Wailua may attack Aetna's unreasonable delay: (1) from the time of Wailua's submitted claim to the initiation of the appraisal; (2) for the time during the appraisal; and (3) for the time between confirmation of the Award and payment of the 1st period costs. All other allegations regarding the Appraisal, and Aetna's conduct therewith, are improper.[5] As drafted, paragraph 15 is fraught with such improper references, thus it is hereby STRICKEN. Wailua is given 30 days leave to amend paragraph 15 and replead its allegations regarding delay in insurance benefits to the extent permitted under *Best Place*.

### B. *Allegations Regarding Unfair Settlement Practices*

Paragraph 21 of Wailua's SAC lists 16 allegations of Aetna's unfair settlement practices. SAC, pp. 9–10. Aetna argues that Wailua is improperly alleging violations of § 431:13–103 of the Hawaii Revised Statutes ("H.R.S."), Unfair Methods of Competition and Unfair and Deceptive Acts and Practices in the Business of Insurance and that paragraph 21 should be stricken.

 It is undisputed that H.R.S. § 431:13–103 does not provide for a private cause of action. The Hawaii Supreme Court recently noted that nothing in the plain language of § 431:13–103 "expressly provides

for a private cause of action for persons insured by insurance companies who violate this article" as all enforcement authority to the Hawaii Insurance Commissioner. *Hough v. Pacific Ins. Co., Ltd.*, 83 Hawai'i 457, 469, 927 P.2d 858 (Haw.1996) (citing to *Hunt v. First Ins. Co. of Hawaii*, 82 Hawai'i 363, 371, 922 P.2d 976 (Haw.Ct.App.1996)). *See also Genovia v. Jackson Nat'l Life Ins. Co.*, 795 F.Supp. 1036, 1045 (D.Haw.1992) (finding that no private right of action under unfair settlement practices act, H.R.S. § 431:13–103(a)(10)). Thus, the only issue before the Court is whether Wailua may use evidence of statutory violations to support a common law cause of action for bad faith. Wailua, citing to *Romano v. Nationwide Mut. Fire Ins. Co.*, contends that violations of the statutory provisions regarding unfair settlement practices may be used as evidence of bad faith. 435 Pa.Super. 545, 646 A.2d 1228, 1233 (Pa.Super.Ct.1994). *Romano* held that evidence of bad faith conduct as defined in various provisions of the Unfair Insurance Practices Act may be used as a basis of recovery under the statutory claim for bad faith under 42 Pa.C.S.A. § 8371.

 However, *Romano* is easily distinguished from the case at bar as the bad faith claim at issue was a statutory rather than a common law right. In fact, the Pennsylvania Supreme Court prior to the enactment of 42 Pa.C.S.A. § 8371, expressly declined to recognize a common law remedy for bad faith. *D'Ambrosio v. Pennsylvania Nat'l Mut. Casualty Ins. Co.*, 494 Pa. 501, 431 A.2d 966 (1981). It stands to reason that when the Pennsylvania legislature enacted a statutory remedy for bad faith, it intended to reference or incorporate other statutory definitions upon the same or similar subjects. *Romano*, 646 A.2d at 1233. In the instant case, the bad faith remedy at issue is of a common law nature. In fact, Hawaii does not have a statutory definition of bad faith which could have been incorporated into H.R.S. § 431:13–103. The Hawaii Supreme Court, in adopting a common law remedy for bad faith, expressed its concern that the administrative remedies provided in H.R.S. § 431:13–103(a)

---

5. For example, Wailua may not challenge whether information submitted to the Appraisal Panel

was relevant, properly within the panel's scope, inaccurate, etc. SAC ¶ 15, §§ (c), (d), (f).

were inadequate to "provide sufficient incentive to insurers to perform their obligations in good faith." *Best Place*, 82 Hawai'i at 127, 920 P.2d 334. Although H.R.S. § 431:13–103 does not provide for a private cause of action, the insurance industry should not be encouraged to commit the types of unfair practices contained therein. Therefore, the Court finds that violations of the unfair settlement provision, § 431:13–103(a), may be used as evidence to indicate bad faith in accordance with the guidelines of *Best Place*.[6] Accordingly, Wailua is permitted to construct allegations that mimic the requirements of § 431:13–103(a) referencing unreasonable delay. As drafted, paragraph 21 of the SAC exceeds this scope. Accordingly, the Court strikes paragraph 21 of the SAC. Wailua is given 30 days leave to amend paragraph 21 in accordance with the parameters outlined in this Order.

### III. *The Court Grants in Part and Denies in Part Aetna's Motion to Dismiss Wailua's Request for Declaratory Relief*

 Aetna's final contention is that Wailua's fourth claim for relief, declaratory relief regarding "extra expense," "repair cost coverage," and "functional replacement cost," should be dismissed for want of jurisdiction. Aetna charges that Wailua has failed to allege an injury sufficient to establish subject matter jurisdiction. The Declaratory Judgment Act ("DJA") permits a federal court to "declare the rights and other legal relations" of parties to a "case of actual controversy." 28 U.S.C. § 2201. The "actual controversy" requirement of the DJA is the same as that under the "case or controversy" requirements of Article III of the U.S. Constitution. *Societe de Conditionnement En Aluminium v. Hunter Engineering Co., Inc.*, 655 F.2d 938, 942 (9th Cir.1981). A case is justiciable under the DJA if "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *NBA v. SDC Basketball Club, Inc.*, 815 F.2d 562, 565 (9th Cir.1987). In other words, allegations of injury must be "sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." *Burlington Northern R.R. Co. v. Crow Tribal Council*, 940 F.2d 1239, 1243 (9th Cir.1991) (citing to *Abbott Laboratories v. Gardner*, 387 U.S. 136, 152, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)).

The Ninth Circuit has found that "a dispute between an insurer and its insureds over the duties imposed by a insurance contract satisfies Article III's case and controversy requirement." *GEICO v. Dizol*, 133 F.3d 1220, 1223 n. 2 (9th Cir.1998) (citing to *American Nat'l Fire Ins. v. Hungerford*, 53 F.3d 1012, 1015–16 (9th Cir.1995)), *overruled on other grounds; American States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir.1994). In *Hungerford*, the American National Fire Insurance Company ("American National") brought a DJA action against Hungerford during the pendency of related proceedings in state and bankruptcy court which named him as a party. 53 F.3d 1012. American National sought a determination whether two policy provisions would serve to exclude Hungerford from coverage, i.e., whether the policy provisions would limit its liability in the related proceedings. *Id.* at 1013. Additionally, in *Kearns*, an action was initiated in state court naming Kearns, doing business as Tahoe Boat. 15 F.3d 142. Subsequently, the insurance company initiated a DJA action to determine whether it had the duty to defend or indemnify under the policy at issue. *Id.* In both *Hungerford* and *Kearns*, the related or underlying suits had identified clear and defined issues which presented an immediate

---

6. The Court notes that the Intermediate Court of Appeals ("ICA") of the State of Hawaii in *Christiansen v. First Ins. Co. of Hawaii*, 88 Hawai'i. 442, 967 P.2d 639 (1998), tacitly approves the submission of violations of the unfair settlement practices statute as evidence of bad faith. The ICA stated that allegations referring to prompt investigation, negligent investigation, failure to promptly pay a determined claim, failure to effectuate prompt settlement, compelling the initiation of litigation, etc. "on their face, meet the *Best Place* test for bringing an action in bad faith...." *Id.* at p. 646. Thus, the ICA permitted the Christiansen's allegations which paraphrased the provisions of § 431–13(a) referring to unreasonable delay.

**1222**

threat of injury thereby conferring DJA jurisdiction.[7]

■ Wailua's fourth claim for relief, Paragraphs 32 through 36, requests the Court to declare Wailua's rights under the policy with respect to "extra expense" "repair cost coverage," and "functional replacement cost coverage." Paragraph 33 states, in relevant part,

Wailua contends that the 'extra expense' coverage in the policy covers all necessary expenses that the insured has incurred or will incur during the period of restoration . . . that would not have been incurred if there had not been a loss. Aetna denies this interpretation and contends that there is no 'extra expense' coverage in the policy.

SAC, ¶ 33, p. 12. Whether the policy at issue provides for "extra expense coverage" is a clearly defined question. Additionally, Wailua's entitlement to "extra expense coverage" may be a significant factor in determining whether to rebuild and, thus, presents an actual controversy to confer DJA jurisdiction. Accordingly, Aetna's motion to dismiss is DENIED with respect to Paragraph 33 and Paragraph 35(a) which expressly refers to Wailua's entitlement to "extra expense" coverage.

■ Paragraph 34, however, is not nearly as clear. Paragraph 34 lists numerous interpretations of the "replacement cost" and "functional replacement" coverage that may be at issue if and when Wailua chooses to rebuild the Coco Palms resort, or chooses to build or buy a replacement property. SAC, ¶ 34. At the outset, the Court notes that Paragraph 34(a) is rendered moot by the Court's decision to GRANT partial summary judgment as to the 1st period. Accordingly, the Court hereby STRIKES Paragraph 34(a). In reviewing Paragraph 34, the only clearly defined question is presented in 34(d), which inquires as to "[w]hether there is now any deadline by which Wailua Associates must choose and purchase such replacement property." SAC, ¶ 34(d), p. 13. The remainder of Paragraph 34 is laden with ambiguous and hypothetical notions as to whether and when coverages will apply. Indeed, Para-

graph 34 begins "Wailua believes it has rights Aetna will not acknowledge under the policy *in the event Wailua chooses to buy or build other property* to replace the lost and damaged insured property." SAC, ¶ 34, p. 12 (emphasis added). The Court finds that the language "in the event" expressly connotes an attenuated hypothetical for which Wailua is impermissibly seeking an advisory opinion. Accordingly, the Court GRANTS Aetna's motion to dismiss as to Paragraph 34, excepting only 34(d). The Court further GRANTS Aetna's motion as to Paragraph 35(b) which expressly refers to "rights and obligations under the Policy in the event" Wailua chooses to buy or rebuild. SAC, ¶ 35(b), p. 14.

Finally, the Court DENIES Aetna's motion to dismiss with respect to Paragraph 35(c), regarding functional replacement cost, and Paragraph 36 which merely states a justification for a DJA action. Wailua is given 30 days leave to amend to present an actual controversy in accordance with the requirements of the DJA.

## CONCLUSION

For the foregoing reasons, the Court (1) GRANTS Wailua's motion for partial summary judgment as to the 1st period and DENIES it as to the 2nd period; (2) GRANTS in part and DENIES in part Aetna's motion to strike; and (3) GRANTS in part and DENIES in part Aetna's motion to dismiss Wailua's claim for declaratory relief. Wailua is given 30 days leave to amend to (1) plead allegations of bad faith denial of insurance benefits; and (2) plead an actual controversy with respect to "repair costs," "replacement costs," and "functional replacement costs."

IT IS SO ORDERED.

---

7. The Court cautions that an underlying or parallel proceeding is not a jurisdictional prerequisite under the DJA. Certainly, other circumstances

may present a threat of immediate injury to confer jurisdiction.